IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | Case No. 1:15-cv-13367 |
| v. | ) | Judge Burroughs |
| MONICA TOTH, | ) | |
| Defendant. | ) | |

**United States' Opposition To Motion To Dismiss Regarding 8th Amendment Claims**

Counsel for United States of America,
CAROLINE D. CIRAOLO
Principal Deputy Assistant Attorney General
U.S. Department of Justice, Tax Division

*/s/Andrew A. De Mello*
ANDREW A. DE MELLO
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
202-307-1372 (direct)
202-307-6533 (main)
202-514-5238 (fax)
Email: andrew.a.de.mello@usdoj.gov

By way of background, the United States alleged in the complaint that defendant Monica Toth willfully failed to file an FBAR as required by statute because she had a bank account in Switzerland which contained over $4 million. Ms. Toth moved to dismiss the action on several theories, from defective service of process, to delayed service, to failure to state a claim on which relief could be granted. These are meritless and were addressed in a prior brief filed by the United States. But Ms. Toth also argued in one or two sentences that the Excessive Fine Clause in the 8th Amendment to the U.S. Constitution precluded judgment from being entered. She cited no authority for her argument.

Undersigned counsel recognized that a similar argument was pending before the Ninth Circuit and sought (and received) an extension of time to brief the issue until the briefs were filed in the Ninth Circuit to ensure that the Tax Division was taking a consistent position. The Ninth Circuit brief has now been filed and this brief thus responds to the 8th Amendment issue Ms. Toth raised. The remainder of the arguments presented by Ms. Toth were addressed in a prior filing by the United States. For the reasons set forth below, the Excessive Fines Clause of the U.S. Constitution does not preclude entry of judgment of approximately $2 million against Ms. Toth for willfully failing to file an FBAR.

As noted earlier, Ms. Toth argues that the United States' suit against her seeking judgment for about $2 million for willful failure to file an FBAR violates the Eighth Amendment's prohibition on excessive fines. *See* U.S. Const., Amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). As explained in the prior brief filed by the United States, the procedural posture of Toth's motion requires that all facts be construed in favor of the United States and all allegations in the complaint be deemed correct; Toth is not permitted to introduce extrinsic evidence. As

explained below, Toth's excessive fines defense fails as a matter of law because the civil FBAR penalty is not excessive as applied to Toth.

**I. Introduction to the Regulatory Landscape.**

The requirement to report interests in foreign bank accounts arises under the Bank Secrecy Act, Pub. L. No. 91-508, 84 Stat. 1114 (1970) (31 U.S.C. §§ 5311 *et seq*.). The record keeping and reporting requirements of the Act serve a number of civil and criminal purposes: obtaining information to facilitate the supervision of financial institutions, obtaining information needed to formulate monetary and economic policy, and achieving civil and criminal tax objectives, including combating tax evasion. *See* H.R. Rep. No. 91-975 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4394, 4397-98 ("Secret foreign financial facilities, particularly in Switzerland" offered the wealthy a "grossly unfair" but "convenient avenue of tax evasion").

The reporting provisions are contained in Title 31 ("Money and Finance") of the United States Code. Section 5314(a) provides that the Secretary of the Treasury "shall require a … citizen of the United States … to … file reports … when the … citizen … makes a transaction or maintains a relation for any person with a foreign financial agency." The statute specifies, among other things, that the reports "shall contain … the identity and address of participants in a transaction or relationship." 31 U.S.C. § 5314(a)(1).

Section 5314(b) authorizes the Secretary to prescribe regulations implementing the statute. The Secretary has exercised that authority by requiring that citizens having a financial interest in, or signature or other authority over, a foreign financial account, "shall report such relationship to the Commissioner of the Internal Revenue for each year in which such relationship exists, and shall provide such information as shall be specified in a reporting form prescribed by the Secretary to be filed by such persons." 31 C.F.R. § 103.24 (2006). The

prescribed form, Form TD F 90.22-1, must be filed on or before June 30 of the following year (during the period at issue here). 31 C.F.R. § 103.27(c) (2006).[1] A United States citizen must file an FBAR if the aggregate value of her foreign accounts exceeded $10,000 at any time during the calendar year. *Id*.

The Financial Crimes Enforcement Network (FinCEN), a bureau of the Department of Treasury, is charged with the responsibility for administering the FBAR reporting. 31 C.F.R. §§ 1010.350, 1010.810. The authority to enforce the reporting requirements, including the authority to assess and collect the FBAR penalty, has been redelegated to the IRS. 31 C.F.R. § 1010.810(g) (formerly 31 C.F.R. § 103.56(g)).

Section 5321(a) provides for "a civil money penalty on any person who violates … any provision of section 5314." 31 U.S.C. § 5321(a)(5)(A). At first, the penalty applied only to willful violations, and the maximum penalty imposed (for each violation) was the greater of (1) an amount equal to the balance in the account at the time of the violation, up to $100,000, or (2) $25,000. 31 U.S.C. § 5321(a)(5)(B)(ii) (2002). After the terrorist attacks of September 11, 2001, Congress directed that attempts be made to improve compliance with the reporting requirements. *See* Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT) Act of 2001, Pub. L. No. 107-56, § 361, 115 Stat. 272, 329-32. Congress ordered the Treasury Department to provide an initial report within six months containing historical data on compliance with the FBAR reporting requirements and to provide annual reports thereafter. *Id.* § 361(b), 115 Stat. 332.

---

[1] In 2011, these regulations, 31 C.F.R. §§ 103.24 and 103.27(c), were recodified as 31 C.F.R. §§ 1010.350 and 1010.306(c), respectively.

In April 2002, the Treasury Department issued its initial report estimating that compliance was potentially less than 20 percent and observing that there were relatively few criminal prosecutions and civil enforcement actions for violations of the FBAR reporting requirements. *See Report to Congress in Accordance with § 361(b) of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001*, at 6, 8 (Apr. 26, 2002). That report also stated that the foremost reason for the limited number of FBAR charges was the difficulty of obtaining sufficient admissible evidence of undisclosed foreign accounts. *Id*. at 8. The Treasury Department provided another report the following year, indicating that compliance with the FBAR reporting requirements remained unsatisfactory. *See Report to Congress in Accordance with § 361(b) of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001*, at 7 (Apr. 24, 2003).[2]

Against this backdrop, Congress enacted the American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 821, 118 Stat. 1418, 1586, in which it (1) expanded the FBAR civil penalty to include a penalty for non-willful violations in an amount "not exceed[ing] $10,000" and (2) increased the amount of the penalty for willful violations to "the greater of … $100,000 or … 50 percent of … the balance in the account at the time of the violation." 31 U.S.C. § 5321(a)(5)(B)-(D). Congress revised the penalty because it "believe[d] that improving compliance with [the FBAR] reporting requirement is vitally important to sound tax

---

[2] The Treasury Department's reports to Congress are available at https://www.fincen.gov/news_room/rp/reports_congress.html. Another such report, provided in April 2005, also indicated that compliance with the FBAR reporting requirements remained unsatisfactory. *See Report to Congress in Accordance with § 361(b) of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001*, at 11 (Apr. 8, 2005).

5

administration, to combating terrorism, and to preventing the use of abusive tax schemes and scams." S. Rep. No. 108-192 (2003), at 108; *see also* H.R. Conf. Rep. No. 108-755 (2004), at 615, *reprinted in* 2004 U.S.C.C.A.N. 1341, 1668 (stating that the conference agreement follows the Senate amendment); Staff of the Joint Comm. on Taxation, *General Explanation of Tax Legislation Enacted in the 108th Congress* (Comm. Print 2005) (JCS-5-05), at 378.

**II. The penalty in this case is not unconstitutionally excessive**

The two million dollar penalty imposed against Toth is not excessive under the Eighth Amendment. A fine violates the Excessive Fines Clause only "if it is grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). The burden is on the party challenging the constitutionality of a fine to demonstrate its excessiveness. *United States v. $132,245.00 in U.S. Currency*, 764 F.3d 1055, 1058 (9th Cir. 2014); *United States v. Bollin*, 264 F.3d 391, 417 (4th Cir. 2001).

In deciding whether a fine is grossly disproportional and therefore excessive, courts do not apply a "rigid set of factors." *See United States v. Mackby*, 339 F.3d 1013, 1016 (9th Cir. 2003).[3] Courts generally consider: the amount of the penalty authorized by Congress; the class of persons for whom the statute at issue was principally designed; the seriousness of the offense and its relation to other illegal activity; the harm caused; and a comparison with the potential criminal penalties, including imprisonment. *See id.* at 1016-19 (civil penalty and treble damages totaling $729,455 did not violate Excessive Fines Clause where defendant had submitted $331,078 in false Medicare claims); *United States v. $132,245.00 in U.S. Currency*, 764 F.3d at 1058-62 (forfeiture of entire amount of smuggled cash did not violate Excessive Fines Clause);

---

[3] Undersigned counsel researched this issue but could not locate any First Circuit authority that examined a similar question.

6

*Balice v. U.S. Dep't of Agriculture*, 203 F.3d 684, 699 (9th Cir. 2000) ($225,500 penalty for violating Almond Marketing Order did not violate Excessive Fines Clause).

Neither the Supreme Court nor any court of appeals has addressed the proportionality of an FBAR penalty under the Excessive Fines Clause. The three district courts to have addressed the question all upheld the penalty (though in one case, *United States v. Bussell*, 2015 WL 9957826, at *1 (C.D. Cal. Dec. 8, 2015), the court reduced the penalty from $1,221,806 to $1,120,513, which it found was the maximum amount permitted by statute, and complied with the 8th Amendment). In *Crawford v. United States Dep't of Treasury*, 2015 WL 5697552 (S.D. Ohio 2015), the plaintiffs sought a preliminary injunction claiming, among other things, that the FBAR willfulness penalty violated the Excessive Fines Clause. The court held that the penalty "survives a facial challenge because the maximum penalty will be constitutional in at least some circumstances." *Id*. at *16. In *Moore v. United States*, 2015 WL 1510007, *13 (W.D. Wash. 2015), the court held that four $10,000 penalties for nonwillful violations passed muster under the Excessive Fines Clause.

1. *The penalty is within the range that Congress prescribed*. Acts of Congress are entitled to a strong presumption of constitutionality. *See, e.g., United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963). In the Excessive Fines Clause context, the Supreme Court has emphasized that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature," whereas any judicial determination regarding the gravity of an offense will be "inherently imprecise." *Bajakajian*, 524 U.S. at 336. The courts therefore give substantial deference to legislative judgments regarding the appropriate penalty. *See United States v. $132,245.00 in U.S. Currency*, 764 F.3d at 1058 ("We refuse to second-guess Congress's determination that bulk cash smuggling is a serious crime. Such a determination is

better left to the legislature than to the courts."); *Crawford*, 2015 WL 5697552, at *16 (maximum FBAR penalty "fixed by Congress is due substantial deference from the courts.").

The single 50-percent penalty imposed against Toth falls within the range that Congress prescribed for her precise violation. Under 31 U.S.C. § 5321, if a person willfully violates the FBAR filing requirement for a particular year, the maximum penalty for that violation is the greater of $100,000 or 50 percent of the account balance at the time of the violation. 31 U.S.C. § 5321(a)(5)(C) & (D). The penalty asserted against Toth is a "civil money penalty" with a prescribed maximum formula. 31 U.S.C. § 5321(a)(5)(A).

A penalty imposed within legislative boundaries is presumptively proportional. *See Qwest Corp. v. Minn. Pub. Utils. Comm'n*, 427 F.3d 1061, 1069 (8th Cir. 2005) (upholding total penalty in excess of $25 million and observing that daily fines were "well within the statutory limits"); *Kelly v. U.S. EPA*, 203 F.3d 519, 524 (7th Cir. 2000) ("we can't say the fine is grossly disproportionate to the gravity of the offense when Congress has made a judgment about the appropriate punishment"); *Pharaon v. Bd. of Governors of Federal Reserve System*, 135 F.3d 148, 157 (D.C. Cir. 1998) (upholding $37 million fine against individual as proportional to his violations of Bank Holding Company Act and "well below the statutory maximum."). The congressionally authorized penalty in this case raises no excessiveness concerns.

2. *Toth falls squarely among a class of persons at whom the statute was directed.*

Toth clearly fits into a class of persons targeted by the Bank Secrecy Act: Americans who seek to avoid their tax obligations by hiding income or assets in undisclosed foreign bank accounts. *Cf. United States v. Bourseau*, 531 F.3d 1159, 1173 (9th Cir. 2008); *Mackby*, 339 F.3d at 1017; *United States v. Sperazza*, 804 F.3d 1113, 1127 (11th Cir. 2015). As discussed above, in enacting the Bank Secrecy Act in 1970 and amending it in 2004, one of the objectives was to

combat tax evasion and abusive tax schemes and scams using offshore bank accounts, particularly in jurisdictions with strict bank secrecy laws like Switzerland. *See* H.R. Rep. No. 91-975, *reprinted in* 1970 U.S.C.C.A.N. at 4397-98; S. Rep. No. 108-192, at 108. For this reason, § 5321 imposes a penalty that seeks to undo the harm caused by persons who are consciously hiding their foreign accounts.[4]

In consequence, it is incorrect to place any reliance on *Bajakajian*, 524 U.S. 321, for the proposition that to survive the strictures of the 8th Amendment, the Government must limit a fine to a proportional dollar loss to the Treasury. There, a traveler seeking to leave the country with $357,144 in cash was arrested for failing to comply with reporting requirements. *Id*. at 325. In the criminal indictment, the Government sought a conviction for violation of the reporting requirement and a forfeiture of the entire $357,144. *Id*. The relevant statute mandated the forfeiture of any property "involved in" a broad range of criminal offenses. *Id*. The Court held that where "[t]here was no fraud on the United States, and respondent caused no loss to the public fisc" (*id*. at 339), the criminal forfeiture of $357,144 was disproportionate to the defendant's particular offense – which was "solely a reporting offense" and was "unrelated to any other illegal activities" (*id*. at 337-38). The Court emphasized that the defendant "does not fit into the class of persons for whom the statute was principally designed: He is not a money launderer, a drug trafficker, or a tax evader." *Id*. at 338.

---

[4] To enforce a law with such a purpose, the United States is permitted to penalize citizens in an amount sufficient to prompt compliance. In order to ensure that wealthy citizens comply with a law requiring disclosure of foreign accounts that may be used to conceal income, it is fully appropriate for a monetary penalty to be sizable in nature. Imposing a penalty of just 1% or 2% of the account balance, for example, would not likely deter a wealthy citizen who is not reporting income to disclose an account that may reveal the misconduct. Thus, it is fully appropriate and constitutional for the United States to impose significant penalties for willful FBAR violations.

Unlike the defendant in *Bajakajian*, Toth is not caught up in a statutory scheme directed largely at other violations. Instead, the willful FBAR penalties were enacted with her precise conduct in mind.

3. *Toth's willful failure to report a foreign bank account is serious and is related to other illegal activities.* The statute authorizes a 50-percent civil penalty only for "*willful*" violations of the FBAR requirement. 31 U.S.C. § 5321(a)(5)(C) (emphasis added). The penalty therefore applies to account holders who acted knowingly, recklessly, or with willful blindness. *See Williams*, 489 Fed. Appx. at 659; *McBride*, 908 F. Supp. 2d at 1204-05. The substantial maximum penalty "shows that Congress believed" that the willful failure to file an FBAR "is a serious offense." *Bourseau,* 531 F.3d at 1173 (citation omitted). By contrast, the civil penalty for a *non-willful* FBAR violation is capped at $10,000 and is subject to a reasonable-cause exception. 31 U.S.C. § 5321(a)(5)(B). The statutory dichotomy between willful and non-willful misconduct reflects Congress's considered choice to reserve the higher penalty for the most serious violations.

The legislative history confirms the serious nature of the willful failure to file an FBAR. When it enacted the Bank Secrecy Act, Congress explained that "secret foreign bank accounts" had enabled the proliferation of crime, including tax evasion, securities violations, and fraud. H.R. Rep. No. 91-975, *reprinted in* 1970 U.S.C.C.A.N. at 4397-98. After the Treasury Department later reported poor FBAR compliance, Congress found that improving compliance was "vitally important." S. Rep. No. 108-192, at 108.

Toth's serious FBAR violation was related to other illegal activities (though she was not charged with any crime). As alleged in the complaint, Toth did not report on her federal income tax return for 2007 the interest income earned from for the year 2007 on the foreign bank

10

account which accrued during 2007. In addition, Toth failed to disclose the existence of the account on the required Schedule B with her tax return, also as alleged in the complaint. Therefore, the evidence indicates that Toth violated the FBAR requirement because she wanted to hide taxable income from the IRS. *Cf. Sperrazza*, 804 F.3d at 1128 (where taxpayer structured transactions to avoid $10,000 reporting requirement in order to hide taxable income from IRS, the relationship-to-other-illegal-activities factor supported forfeiture).

Unlike *Bajakajian*, where the defendant's violation (if undetected) would have deprived the Government only of "information," 524 U.S. at 339, Toth's FBAR violation imposed a tax loss on the public. Toth's contention that there was no tax loss because after she was caught she paid for some of the back taxes lacks merit. This is because Toth only paid back taxes for the most recent tax years, and failed to pay for all the tax years during which taxes were due. Additionally Toth failed to pay interest and penalties on the earlier tax years. Perhaps tellingly, it appears that Toth only paid back taxes, interest, and penalties for the tax years during which a statute of limitations remained open for civil and criminal actions.

    4. *The harm caused was significant*.

Toth's violation is not harmless, as she has suggested. In addition to the direct "tax loss" for the unreported account, the secretive offshore activity in which Toth engaged has "vast" consequences and does significant harm to the integrity of the tax system. See H.R. Rep. No. 91-975, *reprinted in* 1970 U.S.C.C.A.N. at 4397. But for her failure to properly report the account, the IRS would not have expended substantial resources to audit her and the Department of Justice would not have assigned significant resources to this matter. In each of these instances, the United States would have been able to reallocate those resources to pursue collections of

other taxes and thus the United States was deprived of the opportunity cost of pursuing other matters.

Congress based the willfulness penalty on the account balance, not on the tax loss, reflecting a legislative judgment that the harm to the tax system increases with the balance in the unreported account. *See United States v. Chaplin's, Inc.*, 646 F.3d 846, 852 (11th Cir. 2011) ("Congress, as a representative body, can distill the monetary value society places on harmful conduct"). The FBAR penalty therefore need not be correlated with the tax loss in a particular case. *Cf. Mackby*, 339 F.3d at 1019 ("The government has a strong interest in preventing fraud," and the harm of false claims "extends beyond the money paid out of the treasury."); *Sperazza*, 804 F.3d at 1128 (prohibited structuring "decrease[s] the likelihood the IRS would detect the underlying tax evasion and increase[s] the cost of investigating [the] crime"); *Vasudeva v. United States*, 214 F.3d 1155, 1161 (9th Cir. 2000) (rejecting argument that there was no harm from trafficking in food stamps because retailers never redeemed them).

The penalty imposed against Toth is also consistent with the FBAR penalties imposed in other cases. *See United States v. Zwerner*, No. 1:13-cv-22082 (S.D. Fla.), Doc. 84 (notice of settlement for two 50-percent civil FBAR penalties following jury verdict for three such penalties).

For the foregoing reasons, the penalty asserted in this action against defendant Toth fully comports with the excessive fines clause of the 8th Amendment.

**Certificate of Service**

I hereby certify that a true copy of the above document was served upon the following party by mail on December 14, 2016:

Monica Toth
76 Hallet Hill Road
Weston, MA 02493

                                                                 */s/Andrew A. De Mello*
                                                                 ANDREW A. DE MELLO
                                                                 Trial Attorney, Tax Division
                                                                 U.S. Department of Justice