October 11 2018

Hon. Allison D. Burroughs
U.S. District Court, Boston
1 Courthouse Way
Boston MA 02210

FILED
IN CLERKS OFFICE

2018 OCT 12 AM 8: 29

U.S. DISTRICT COURT
DISTRICT OF MASS.

Re: Civil Action No. 1:15-CV-13367-ADB

Judge Burroughs,

    My intent is to always comply with all laws. This includes at your Court, contrary the Plaintiff's false claims: my evading service, not conferring, acting dilatory, wrongfully obstructing discovery with my responses, and willfully failing to fulfill legitimate requests relevant and material to the Complaint.

    This letter summarizes how I did comply when choosing anonymity, reporting income, paying tax, completing Part III of Schedule B, and filing FBARs. Next, I address one (at 5) of two denials in reply ECF 105 to my claims regarding the FBAR penalty, which the Plaintiff tried to substantiate with evidence (ECF 105-3) in its reply to ECFs 99 and 102.

    For the tax years thru 2009 (filed April 10 2010), I mistakenly believed that the Bank was anonymously reporting all of the income and fully paying all taxes due from the Account. I understood that the Bank routinely charged the Account a fixed rate for its custodial services as would be ordinarily expected. For example in 2007, the Bank charged $ 11,832.24 (see ECF 93-12 at 3) which the IRS audited and appropriately deducted from my income (at 2). Consequently, I innocently chose anonymity which I thought was lawful and didn't report income nor pay tax myself.

    For the tax years thru 2007 (filed April 10 2008), I was unaware of both completing Part III of Schedule B and filing FBARs because I had been skipping Part III and consequently the FBAR too. See ECF 93-2 at 11. So, I didn't knowingly chose anonymity with respect to Part III or the FBAR.

    For the 2008 tax year (filed April 1 2009), I read Part III and reasoned that the Bank took care of filing FBARs (if required) in addition to income and taxes. This year, the Bank charged $ 11,262.60 for its custodial services, which the IRS audited and appropriately deducted from my income. So, while I still didn't chose anonymity with respect to the FBAR, I was content that the Bank all on its own took care of these things for me.

I also reasoned and was convinced that I was not required to complete Part III since the Bank reported the income, paid all the taxes, and took care of filing FBARs, plus the Plaintiff never had a problem with my not completing Part III nor filing an FBAR (unlike with the rest of my returns!). The IRS routinely wrote me whenever I failed to complete some part or file some form, for example the portions of my original 2007 tax return regarding the AMT in order to show that no AMT was due. As with the income and taxes, I innocently chose anonymity which I understood was lawful, now (April 1 2009) with respect to Part III by not completing it.

For the 2009 tax year, I thought I would likely be required to file an FBAR. Although now (April 10 2010) I felt uncertain about my not completing Part III, I thought to the best of my knowledge and belief that Part III was not required because the Bank was reporting the income and paying all taxes (and charged me for its custodial services, as was audited and deducted by the IRS), plus the Plaintiff never had a problem with my never completing any of Part III nor ever filing any FBAR. I accordingly chose anonymity with respect to Part III and didn't complete it. I then checked into my duty to file an FBAR, and of course chose disclosure and not anonymity with respect to filing FBARs; see ECF 93-2 at 5.

ECF 105-3 is a lamentable hoax which does not accurately report the meeting. The truth is that Revenue Agent Stephen Paradise started off the meeting by going over their Counsel's preliminary FBAR penalty determination, and presenting the reasons why their Counsel believes that the 50% willfulness penalty is applicable. The important inaccuracy is that the report states that the determination was "RA's" and that "RA believes that" the 50% willfulness penalty is applicable. This misrepresentation imputes plagiarism.

These reasons for the 50% willfulness penalty are:

1. I did not want other people to know that I had the Account (and so I innocently chose anonymity on tax returns up to April 10 2010).

2. I didn't report income on any of these tax returns (and so I didn't pay tax too, since I mistakenly believed the Bank paid the tax too).

3. I didn't complete any of Part III of Schedule B (and so I didn't report on the tax returns either case: whether I had or did not have a foreign account).

4. I failed to file timely FBARs (and so I filed them in November 2010 after I finally understood what I had to do).

Earlier on February 21 2012, Revenue Agent Paradise had informed me that an FBAR penalty could still be imposed, and warned me that the magnitude of the penalty could be as high as $ 10,000 for each of the 5 audited years. At the very beginning of the meeting on March 20, he looked directly at me and explicitly stated that he is presenting Counsel's (not his!) preliminary FBAR penalty determination and why Counsel (not he!) believes that the 50% willfulness penalty is applicable.

At this point, his boss (Group Manager David Doherty) cut off his presentation and took over. He (a revenue agent at the GS-13 level) immediately looked down away from us, didn't say another word, and seldom looked back up with the boss present. The boss continued to present fictitious reasons for why they all believe that the 50% willfulness penalty is applicable, as he, with his head down, silently listened. But when his boss momentarily left the room, Revenue Agent Stephen Paradise looked back up directly at me and disclosed to me that important documents (likely exculpatory though otherwise unidentified) which I would want were deliberately destroyed.

A careful reading of ECF 105 reveals that for no reason other than ECF 105-3, the Plaintiff denies that the revenue agent finally decided at the conclusion of the tax audit, that he will not assert any type of FBAR penalty for the 2007 or prior years. While the Plaintiff does have fictitious records, such as ECF 105-3, to support some of its denials, it dares not to affirmatively declare that its own records do not support all of my claims in ECFs 99 and 102 because the honest records do.

Sincerely,

/s/ *Monica Toth*   pro se
Pro se Defendant

Monica Toth
76 Hallet Hill Rd
Weston MA 02493

Certificate of Service

I certify that a true and correct copy of the attached letter dated October 11 2018 will be sent by USPS on October 12 2018 duly prepaid to the attorney for the Plaintiff. The envelope is addressed:

Andrew A. De Mello
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044

/s/ *Monica Toth*   pro se
Pro se Defendant

Monica Toth
76 Hallet Hill Rd
Weston MA 02493