UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| Plaintiff, | * |
| v. | * Civil Action No. 15-cv-13367-ADB |
| MONICA TOTH, | * |
| Defendant. | * |

# MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO VACATE SANCTIONS

BURROUGHS, D.J.

The United States of America filed this case to collect a civil penalty assessed against Defendant Monica Toth ("Defendant") for her alleged failure to timely report her financial interest in, and/or her signatory or other authority over, a bank account in her name at UBS AG ("UBS") in Zurich, Switzerland (the "Account") for the 2007 calendar year, in violation of 31 U.S.C. § 5314 and 31 C.F.R. § 1010.350. [ECF No. 1]. Currently before the Court is Defendant's motion to vacate sanctions previously imposed by the court. [ECF No. 130]. For the reasons set forth below, Defendant's motion is DENIED.

## I. BACKGROUND AND PROCEDURAL HISTORY

On September 16, 2015, the Government filed this action against Defendant. [ECF No. 1]. After repeated attempts to serve Defendant were met with Defendant's seemingly deliberate efforts to evade service, Defendant was finally served at her Massachusetts residence on January 11, 2016. [ECF No. 5-2 ¶¶ 1–5, 7–8]. Defendant then failed to file a timely response to the Complaint or to oppose the Government's motion for entry of default judgment. [ECF No. 8].

At a hearing on a motion for entry of default on April 29, 2016, Defendant represented herself *pro se* and was advised, given the millions of dollars at stake in this matter, to retain counsel. [ECF No. 30 (Apr. 29, 2016 Hr'g Tr.) at 11:14–22, 20:3–4, 23:8–13]. Defendant indicated that she would retain counsel and sought assistance in identifying representation. [Id. at 12:9–10]. The Court granted Defendant a thirty-day extension to move to vacate the default judgment and warned Defendant to not let additional deadlines pass without responding appropriately. [Id. at 22:6–24:3, 23:15–19].

Despite Defendant's stated intention to hire counsel, Defendant did not do so. During hearings on September 20, 2017, and again on March 12, 2018, the Court repeated its recommendation that Defendant hire counsel. [ECF No. 105-4 (Sept. 20, 2017 Hr'g Tr.) at 12:15–19; ECF No. 131-18 (Mar. 12, 2018 Hr'g Tr.) at 14:13–15].[1] Defendant nonetheless continued to represent herself *pro se* until November 15, 2018, when Defendant's current counsel entered their appearances in this matter. [ECF Nos. 116; 117].

Throughout the two years during which Defendant represented herself *pro se*, Defendant repeatedly missed deadlines, refused to comply with discovery rules, and failed to observe this Court's explicit orders regarding her discovery obligations. See, e.g., [ECF Nos. 61; 62; 63; 75; 80; 81; 81-1; 82; 83; 84; 86; 92; 93; 93-2; 96; 97; 99; 102; 106; 109]. In response to Defendant's persistent violations, the Government filed a motion seeking sanctions against Defendant, which it later amended following further discovery lapses by Defendant. [ECF Nos. 83, 86, 93]. The Defendant did not oppose the Government's motion for sanctions or show sufficient cause as to

---

[1] The Account at issue held assets valued at over $4 million and Defendant has never indicated to the Court that her reluctance to hire counsel stemmed from an inability to pay.

why its motion should be denied. [ECF Nos. 97; 99; 102; 106; 109]. The Court granted the

Government's motion on October 15, 2018. [ECF No. 110].

The sanctions the Court imposed on Defendant included accepting the following four

facts as established for the purposes of this litigation:

1. Defendant had legal control over, and the legal authority to direct the disposition of the funds in, the Account (and any sub-accounts), by investing the funds, withdrawing the funds, and/or transferring the funds to third-parties, between the date the Account was opened and at least December 31, 2008.

2. Should the United States establish that Defendant is liable for the penalty alleged in the complaint, for the purposes of calculating the amount of such penalty, the Account (and any sub-accounts) contained $4,347,407 as of the penalty-calculation date.

3. Defendant had a legal obligation to timely file [a Financial Bank Account Report ("FBAR")] regarding the Account in each calendar year that the Account was open, including with regard to calendar year 2007.

4. Defendant willfully failed to file an FBAR regarding the Account with respect to calendar year 2007.[2]

[ECF No. 110 at 12]. The Court also awarded the Government reasonable costs and attorney's

fees incurred in making its motion for sanctions, consistent with Federal Rule of Civil Procedure

37(b)(2)(C). Defendant now asks the Court to vacate its sanctions order. [ECF No. 130].

## II. DISCUSSION

Styled a "Motion to Vacate," Defendant cites no legal authority to support her request.

See [ECF No. 130]. In its opposition, the Government treats the motion as a motion for

reconsideration. [ECF No. 141 at 2]. The Court agrees with the Government's characterization

---

[2] Whether a person has willfully failed to comply with a tax reporting requirement is a question of fact. United States v. Williams, 489 F. App'x 655, 658 (4th Cir. 2012) (citing Rykoff v. United States, 40 F.3d 305, 307 (9th Cir. 1994)); see also Cruz v. Bos. Litig. Sol., No. 13-11127, 2016 U.S. Dist. LEXIS 187470, at *24 (D. Mass. May 24, 2016) ("Generally, willfulness is a question of fact for the jury.").

3

of the motion, which seeks relief from an interlocutory discovery order, rather than a final judgment. The First Circuit has held that orders imposing sanctions for discovery violations are interlocutory, rather than final. See Appeal of Licht & Semonoff, 796 F.2d 564, 570 (1st Cir. 1986) (citing authority in support of the interlocutory nature of orders for sanctions). Federal Rule of Civil Procedure 54(b) provides the Court with authority to grant discretionary relief from interlocutory orders:

> Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

The language of Rule 54(b) is discretionary: the Court "*may . . . revise[]*" an order. See Fed. R. Civ. P. 54(b) (emphasis added); see also Homeowner Options for Mass. Elders, Inc. v. Brookline Bancorp, Inc., 789 F. Supp. 2d 242, 243 (D. Mass. 2011) ("Whether to reconsider an order is 'within the sound discretion' of the Court." (quoting Campos v. P.R. Sun Oil Co., Inc., 536 F.2d 970, 972 n.6 (1st Cir. 1976))). Although the Rule provides courts with the authority to revise interlocutory orders before entry of final judgment in a matter, the Rule does not provide specific standards or factors for courts to consider. See Fed. R. Civ. P. 54(b). Courts within the First Circuit have found that, "[p]ursuant to Fed. R. Civ. P. 54(b), the Court has the power to afford relief from interlocutory judgments 'as justice requires.'" Brookline Bancorp, 789 F. Supp. 2d at 243 (quoting Greene v. Union Mut. Life Ins. Co., 764 F.2d 19, 22 (1st Cir. 1985)).

Justice has been understood to require courts to grant motions for reconsideration "in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." De Giovanni v.

4

Jani-King Int'l, Inc., 968 F. Supp. 2d 447, 450 (D. Mass. 2013) (quoting United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009)). "Generally, courts should be 'loathe' to grant motions for reconsideration in the absence of these 'extraordinary circumstances.'" Audette v. Carrillo, No. 15-cv-13280, 2017 U.S. Dist. LEXIS 37962, at *14 (D. Mass. Mar. 16, 2017) (quoting Davis v. Lehane, 89 F. Supp. 2d 142, 147 (D. Mass. 2000)). Because Defendant has not offered newly discovered evidence specific to Defendant's discovery failures, presented a change in the law, or identified an error in the law relied upon by the Court with regard to the discovery sanctions, the Court will proceed by analyzing whether its order for sanctions was "clearly unjust." See De Giovanni, 968 F. Supp. at 450.

      **A.**      **The Court's October 2018 Order Imposing Sanctions**

Federal Rule of Civil Procedure 37(b)(2)(A) sets forth potential sanctions that a court may impose upon a party that has failed to obey a discovery order, which include, "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." Fed. R. Civ. P. 37(b)(2)(A)(i). In addition to outlining possible court-imposed penalties, the Rule also requires courts to order that the sanctioned party or its attorney pay the reasonable expenses, including attorney's fees, caused by that party's failure to comply. Fed. R. Civ. P. 37(b)(2)(C). As the Court noted in its October 2018 Memorandum and Order, courts should "consider the totality of events and then choose from the broad universe of available sanctions in an effort to fit the punishment to the severity and circumstances of the violation." [ECF No. 110 at 7 (quoting United States v. Pfizer, Inc., 188 F. Supp. 3d 122, 136–37 (D. Mass. 2016))]. Here the Court did just that. See generally [ECF No. 110].

In considering whether to impose sanctions against Defendant, the Court considered the totality of the circumstances, including "the severity of the discovery violations, legitimacy of the party's excuse for failing to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions." AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 429, 435 (1st Cir. 2015); see [ECF No. 110 at 7–11]. After analyzing these factors, including Defendant's "severe, repeated, and deliberate" violations of the Court's discovery orders and Defendant's inability to provide a legitimate excuse for her failures, the Court determined that there were "no effective options other than to impose strong sanctions against Defendant." [ECF No. 110 at 8, 10].[3]

### B. Parties' Positions Regarding Justice of the Court's Order

The parties have submitted responses, replies, and sur-replies in support of and in opposition to Defendant's motion to vacate. [ECF Nos. 130; 141; 147; 149; 151; 157]. In addition, both parties have submitted declarations from experts in U.S. tax law and Swiss law. [ECF Nos. 140; 147-5].

Defendant argues that allowing the sanctions order to stand will result in "significant injustice." [ECF No. 130 at 1]. In support of her motion, Defendant suggests that the conduct

---

[3] The Court warned Defendant repeatedly that sanctions would result from her dilatory and incomplete responses to the Government's discovery requests and for her failure to comply with the Court's orders. See, e.g., [ECF Nos. 82; 84; 96; ECF No. 131-18 (Mar. 12, 2018 Hr'g Tr.) at 3:14–18, 17:4–6]. In addition, as a result of Defendant's decision to continue to represent herself *pro se*, the Court gave Defendant multiple extensions and ample consideration for her lack of familiarity with procedural requirements. See, e.g., [ECF Nos. 43; 63; 64; ECF No. 30 (Apr. 29, 2016 Hr'g Tr.) at 24:10–19]. As the Court noted in its Memorandum and Order on the Government's motion for sanctions, however, "*pro se* litigants are not excused from compliance with procedural rules or substantive law." [ECF No. 110 at 9 (quoting Faust v. Cabral, No. 1:12-cv-11020, 2015 U.S. Dist. LEXIS 193860, at *6 (D. Mass. May 15, 2015)].

6

that gave rise to the sanctions was less serious because it did not involve attempts to hide information that would damage or benefit her case or efforts to conceal defenses to seek a litigation advantage. See [id.]. Consistent with this, the Court's Order, which resulted from Defendant's repeated failures to meet deadlines, comply with discovery rules, and observe the Court's orders, did not rely on Defendant's motives for her conduct. See [ECF No. 110].[4] Defendant now attempts to explain her actions by claiming that the conduct of IRS auditors and representations by the United States caused her to develop "a deep distrust of the United States' actions in this matter," which resulted in her unwillingness to fulfill her discovery obligations in violation of the Court's orders. [ECF No. 130 at 1–2]. Defendant further seeks to assure the Court that the conduct will not be repeated and counsel for Defendant support this by claiming that since they began representing Defendant, they have "worked constructively with the United States, and continue[] to do so, to provide all outstanding discovery." [Id. at 2].

In seeking to vacate the sanctions, the Defendant focuses her arguments on her belief that the sanction that establishes as fact her willful failure to file an FBAR for 2007 is particularly unjust. See, e.g., [ECF No. 130 at 2, 15–16; ECF No. 147 at 6–10]. In support of her contention that her failure wasn't willful, Defendant claims that she "only learned of an obligation to file FBARs after receiving a notice from her bank, UBS, in 2010 . . . ." [ECF No. 147 at 2]. UBS sent Defendant a "notice to UBS accountholders" on March 9, 2010, alerting U.S. accountholders that their accounts were within the scope of an IRS treaty request for

---

[4] Defendant has asserted that "the conclusions the Court drew concerning her discovery violations were in large part swayed by representations made by the United States concerning her conduct," however, the Court based its discovery sanctions on Defendant's persistent and egregious failures to comply with the Court's orders, despite many opportunities to correct those failures. [ECF No. 147 at 4; see ECF No. 110].

information.  [ECF No. 139-12 at 1].  The letter asked accountholders to consult with a U.S. tax advisor to decide whether to consent to UBS providing their account information to the IRS and/or to consent to the IRS sharing FBAR forms with the Swiss Federal Tax Administration.  [Id.].  Finally, the letter provided accountholders with information about the IRS's voluntary disclosure program for taxpayers with U.S. tax and filing obligations stemming from their offshore accounts with UBS.  [Id. at 4].

It is Defendant's position that she "mistakenly believed [UBS] as a fiducial custodian, automatically took care of all reporting and paying to the government which was required.  This specifically included the Bank's withholding and remitting taxes if any were due."  [ECF No. 93-2 at 12; see ECF No. 147 at 8].  Defendant states that when she learned of the need to report her account to the IRS through the March 2010 communication from UBS, Defendant contacted the IRS to determine what was required and sent FBARs for the appropriate years, including 2007, to the Department of the Treasury in early November 2010.  [ECF No. 130 at 16; ECF No. 93-2 at 5; ECF No. 131-5 at 2; ECF No. 139-17 at 179–80].  Although she initially sent incomplete forms indicating that she would provide more complete information at a later date, by late November 2010 she had provided complete forms, albeit to an incorrect postal address.  [ECF No. 130 at 4–5; ECF No. 131-10 at 2, 4].  Due to Defendant's mailing error, the IRS did not receive the FBARs until she provided copies to an IRS auditor in 2011.  [ECF No. 130 at 6].

The Government counters that it has demonstrated that Defendant's conduct in failing to file a timely 2007 FBAR was willful, and that the Court's Order establishing as fact that Defendant willfully failed to file an FBAR for 2007 was warranted and not clearly unjust.  [ECF No. 141 at 11–12; ECF No. 110 at 12].  The Government cites legal authority to support its contention that willfulness under 31 U.S.C. § 5321(a)(5) can be proven through conduct that is

either reckless or willfully blind and asserts that Defendant's conduct was both. [ECF No. 141 at 11–12].

      **C.**       **Legal Analysis**

As conceded in her briefings, through her deposition testimony Defendant has admitted facts one through three from the Court's October 2018 Order. [ECF No. 130 at 14]. As a result, the Court focuses its analysis on whether it would be unjust to continue to treat the assertion that "Defendant willfully failed to file an FBAR regarding the Account with respect to calendar year 2007" as an established fact. In its October 2018 Order, the Court considered the impact of establishing this fact as a sanction against Defendant, [ECF No. 110 at 9–10], and determined that the sanctions would "not foreclose Defendant from arguing what appears to be her primary affirmative defense which is that the fine imposed by the Government violates the Excessive Fines Clause of the Eighth Amendment," [Id. at 9].

      1.       Defendant's Document Production Delays

The Government has provided the Court with e-mail correspondence from November 2018 in which the Government asked Defendant to sign a waiver allowing UBS to provide the Government with records of the Account. [ECF No. 139-1; ECF No. 139-3 at 1]. Counsel for Defendant refused to sign the waiver. [ECF No. 139-4]. The Government also provided the Court with a copy of a letter sent by counsel for Defendant to UBS on February 7, 2019, in which counsel for Defendant requested materials from UBS regarding the Account with limitations as to content ("communications" and "bank statements") and time period. [ECF No. 139-5 at 1–2]. Counsel for Defendant represented to the Government in June 2019 that they had made a new request to UBS for all materials related to the Account "without limitation" [ECF

9

No. 139-7], and the Government has provided a declaration that it received 2,500 pages of UBS records regarding the Account from Defendant on August 5, 2019, [ECF No. 152 at 1].

Defendant's approach to producing the UBS records was inconsistent with the Court's January 2018 Order, which required Defendant to answer all Rule 34 production requests unless she could claim that requested documents were protected by privilege. [ECF No. 84 at 1–2]. Counsel for Defendant took nine months—from the time counsel entered their appearance in this matter in November 2018 until August 2019—to comply with the Court's Order and provide *all* documents relating to the Account. See [ECF Nos. 116; 117; 152].[5] In addition to Defendant failing to timely comply with the Court's Order when representing herself *pro se*, Defendant's counsel also failed to comply with the Court's Order in a timely manner. See [ECF Nos. 84; 139-3; 139-4; 139-5].

Further, Defendant's failure to comply with the Court's January 2018 discovery Order was only one basis for the Court's imposition of the sanctions at issue. [ECF No. 110 at 4–5, 8, 10]. In light of the Court's assessment in its October 2018 Order of Defendant's failure to comply with the Court's January 2018 discovery Order and also considering documents provided by the Government evidencing Defendant's continued failure to comply through at least early August 2019, it was not unjust as a legal or factual matter to deem Defendant's conduct as willful.

---

[5] Defendant claims in her sur-reply that "not once in the approximate four years that [the Government] litigated against Ms. Toth did it specifically seek to compel Ms. Toth to produce her UBS bank records." [ECF No. 157 at 2]. To the extent Defendant is arguing that the Government did not move to compel production of UBS records specifically, the Court observes that the Government sought to compel the production of *all* documents responsive to its requests given Defendant's failure to provide *any* documents, let alone the UBS records. [ECF No. 83 at 2 ("More than 2 months after the response deadline, Ms. Toth has not provided a single document or response to the discovery.")].

2. <u>Willfulness in the Context of 31 U.S.C. § 5321(a)(5)(C)</u>

Assuming, *arguendo*, that a question remains as to the justice of leaving in place the sanction that establishes as fact Defendant's willful failure to file an FBAR for 2007, the Court will briefly analyze evidence provided by both parties with regard to whether Defendant's conduct was, in fact, willful.

Penalties for violations of 31 U.S.C. § 5314 and 31 C.F.R. § 1010.350 are provided in 31 U.S.C. § 5321(a)(5). The statute provides for enhanced penalties where a Defendant's violation is "willful." <u>Id.</u> at § 5321(a)(5)(C). In the context of § 5321(a)(5)(C) and FBAR reporting requirements, courts have noted that "'[w]illfulness may be proven through inference from conduct meant to conceal or mislead sources of income or other financial information,' and it 'can be inferred from a conscious effort to avoid learning about reporting requirements.'" <u>United States v. Williams</u>, 489 F. App'x 655, 658 (4th Cir. 2012) (quoting <u>United States v. Sturman</u>, 951 F.2d 1466, 1476 (6th Cir. 1991)).[6] Willfulness applies to conduct that is reckless or willfully blind. <u>Safeco Ins. Co. of Am. v. Burr</u>, 551 U.S. 47, 57 (2007) ("[W]here willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing

---

[6] The First Circuit has not yet had an opportunity to consider the willfulness standard in the context of 31 U.S.C. § 5321(a)(5)(C) penalties. In the context of other tax reporting violations that require a finding of willful conduct, however, the First Circuit has held that a finding of willfulness can apply to conduct that is reckless or willfully blind. <u>Thomsen v. United States</u>, 887 F.2d 12, 17 (1st Cir. 1989) ("In the civil context, 'willful conduct denotes intentional, knowing and voluntary acts. It may also indicate a reckless disregard for obvious or known risks.'" (quoting <u>Monday v. United States</u>, 421 F.2d 1210, 1215 (7th Cir. 1970))). In addition, although not binding authority on the Court, the IRS issued a Program Manager Technical Advice memorandum in 2018 which states that willfulness "includes not only knowing violations of the FBAR requirements, but willful blindness to the FBAR requirements as well as reckless violations of the FBAR requirements." IRS, *Burden of Proof and Standard for Willfulness Under 31 U.S.C. 5321(a)(5)(C)*, PMTA 2018-013 (May 23, 2018), https://www.irs.gov/pub/lanoa/pmta_2018_13.pdf.

violations of a standard, but reckless ones as well . . . ."); see also Bedrosian v. United States et al., 912 F.3d 144, 152 (3d Cir. 2018) (holding that for the purposes of civil FBAR penalties, willfulness incorporates recklessness); Williams, 489 F. App'x at 658 ("Similarly, 'willful blindness' may be inferred where 'a defendant was subjectively aware of a high probability of the existence of a tax liability, and purposefully avoided learning the facts point[ing] to such liability.'" (quoting United States v. Poole, 640 F.3d 114, 122 (4th Cir. 2011))).

FBARs "shall be filed with the Commissioner of Internal Revenue on or before June 30 of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." 31 C.F.R. § 1010.306(c). Thus, Defendant's 2007 FBAR should have been filed by June 30, 2008. See 31 C.F.R. § 1010.306(c).[7] Not only did Defendant fail to file a timely 2007 FBAR, but on her 2007 federal income tax return Defendant failed to mark "yes" or "no" in response to Question 7a in Schedule B, Part III, which asked, "At any time during 2007, did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account?" [ECF No. 139-15 at 71].

At her March 21, 2018 deposition, Defendant testified, "I didn't know there was a duty to report to the U.S. Government . . . ." [ECF No. 139-16 at 191]. Defendant also testified that she agreed with the statement that "omissions on [S]chedule B caused her to under-report and to underpay her tax liabilities in each year." [Id.]. Those omissions include her failure to check

---

[7] There is no dispute that Defendant's November 2010 failed attempt to file an FBAR for 2007 was late; the dispute arises as to whether her failure to file in a timely manner was willful under 31 U.S.C. § 5321(a)(5)(C).

"yes" or "no" in response to Question 7a regarding whether she had any foreign financial accounts. See [ECF No. 139-15 at 71]. In her responses to interrogatories, Defendant stated:

> I concluded that I may simply skip Part III (and any additional paperwork) and avoid duplicating the Bank's answering on my behalf questions about my Account to the extent that I was required to fill in Part III (and any additional paperwork. This was in addition to my not duplicating the Bank's reporting the income (if any) in the Account and their payment of taxes (if any) due.

[ECF No. 139-15 at 19].[8] Defendant acknowledged receipt from UBS of at least some bank statements for the Account. [ECF No. 93-2 at 20, 30]. Defendant therefore had access to statements for the Account and would have been able to determine that UBS was not, in fact, deducting funds from her account to pay U.S. taxes on her behalf.

In addition to her failures to report the Account on her 2007 income tax return or in a timely filed FBAR for 2007, Defendant's own testimony highlights the fact that she took steps to maintain the secrecy of the Account. See [ECF No. 139-16 at 125–26 (transcript of Defendant's March 21, 2018 deposition in which Defendant stated that her brother advised her "[d]on't tell anybody about the account" before she signed paperwork to open the Account in her name); id. at 191 ("there was this thing pounding on me—don't tell anybody about the account, don't tell anybody about the account")]. In notes from a 2011 audit, an IRS auditor recorded Defendant's response as to why she had not filed timely FBARs: "[Her] father told [her] not to disclose the UBS account to anyone. While [her] father was alive and when [her] father transferred money to the UBS account as an inheritance/gift situation, [her] father told [her] to keep the account secret at all times." [ECF No. 131-12 at 2].

---

[8] Defendant has also stated that she failed to mark "yes" or "no" in response to Question 7a because she "merely copied the prior year's return using the current year's numbers entirely skipping Part III in the process." [ECF No. 93-2 at 12]. Defendant, however, completed Parts I and II of Schedule B on her 2007 income tax returns, which are on the same page as a section with a bold heading, "Part III Foreign Accounts and Trusts." [ECF No. 139-15 at 71].

13

In its submissions, the Government has referenced UBS's internal notes on the Account from the early 2000s, which discuss the Qualified Intermediary Agreement ("QI") between the U.S. government and UBS Switzerland, effective in 2001. [ECF No. 141 at 17; ECF No. 149 at 2]. According to the QI, UBS account holders could either disclose their identity to U.S. authorities by completing a W-9 or by authorizing the bank to sell all of the account holder's U.S. securities. [ECF No. 141 at 17–18]. Defendant did not complete a W-9. [Id. at 18; ECF No. 139-18 at 9]. UBS notes from an October 4, 2000 telephone call with Defendant state, "She has known for quite some time that she has to sell the U.S. securities because of the IRS form, since she is a U.S. citizen." [ECF No. 149-1 at 1]. In addition, UBS notes regarding communications with Defendant in 2003 and 2004 state that Defendant indicated she did not want to buy U.S. securities. [ECF No. 139-18 at 9; see ECF No. 141 at 18]. It therefore appears that Defendant sought to keep the Account hidden from U.S. authorities by refusing to complete a W-9 and by ensuring that the Account would not contain U.S. securities, which would trigger UBS's reporting requirements. See [ECF No. 139-18 at 9–10; ECF No. 141 at 17–18].

The Government also references records of UBS communications with Defendant and a declaration from an expert in Swiss law to argue that Defendant knew as early as 2004 that transfers from the Account to her U.S. bank account would soon be required to record the name and account number of the transferring account. [ECF No. 141 at 14–17; ECF No. 139-18 at 10 ("I had to tell her that I will no longer send her the monthly USD 15,000 without listing the ordering party. She therefore does not wish to receive any further payments at this time.")]. The Government cites transactions documented in Defendant's UBS records for the Account to support their contention that Defendant routed transfers through the accounts of family members in South America. [ECF No. 141 at 14–17; see ECF No. 139-18 at 11–22]. The Government

14

alleges that Defendant took this step to ensure that information about the Account, including her name and the Account number, would not be reported. [ECF No. 141 at 14–17]. Again, Defendant seemingly sought to keep the Account hidden from U.S. authorities, consistent with her deposition testimony and her failure to report the existence of the Account on her 2007 income tax returns. [ECF No. 139-16 at 125–26, 191; ECF No. 139-15 at 71].

In summary, Defendant's willfulness in failing to file a 2007 FBAR "can be inferred from [her] conscious effort to avoid learning about reporting requirements." Williams, 489 F. App'x at 658 (quoting Sturman, 951 F.2d at 1476). She took deliberate steps to maintain the secrecy of the Account, in spite of opportunities for disclosure, which evidences willful "conduct meant to conceal or mislead sources of income." Id. In addition, Defendant had access to bank records and statements for the Account, but did not question why UBS was not deducting funds from the Account to pay U.S. taxes, evidencing her reckless disregard for the risks of not investigating her tax obligations on the Account. See Thomsen, 887 F.2d at 17 ("In the civil context, 'willful conduct . . . may also indicate a reckless disregard for obvious or known risks.'"). Therefore, the Government has provided more than sufficient evidence to establish for present purposes that Defendant was willfully blind or reckless in her decision not to investigate her U.S. tax obligations for the Account or to report the Account to the IRS. See id.; see Williams, 489 F. App'x at 658.

In light of the foregoing, the Court finds, as more fully set forth in its October 2018 Order, that Defendant's failure to comply with the Court's January 2018 discovery Order through early August 2019 warrants leaving the current sanctions in place and that doing so would not be "clearly unjust" either as a legal or factual matter. See De Giovanni, 968 F. Supp. at 450. Defendant's motion to vacate, [ECF No. 130], is DENIED.

In a combined sur-reply and motion to strike, [ECF No. 151], the Government sought to strike the declaration of D. Sean McMahon, which Defendant submitted with her reply, [ECF No. 147-5]. The Government's motion is <u>DENIED</u>. The denial is without prejudice to the Government's ability to challenge the contents or nature of this declaration at a later stage in these proceedings.

The Government has also asked the Court to order Defendant to pay the costs of the expert witness it retained in support of its opposition to Defendant's motion. [ECF No. 141 at 21; ECF No. 140]. The Government's request is <u>DENIED</u>.

## III. CONCLUSION

For the reasons explained above, Defendant's motion to vacate sanctions, [ECF No. 130], is <u>DENIED</u>.

**SO ORDERED.**

December 20, 2019                                      <u>/s/ Allison D. Burroughs</u>
                       ALLISON D. BURROUGHS
                       U.S. DISTRICT JUDGE