UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 15-cv-13367-ADB |
| MONICA TOTH, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |

## MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT

BURROUGHS, D.J.

The United States of America filed this case to collect a civil penalty assessed against Defendant Monica Toth ("Defendant") for her failure to timely report her financial interest in, and/or her signatory or other authority over, a bank account in her name at UBS AG ("UBS") in Zurich, Switzerland (the "Account") for the 2007 calendar year, in violation of 31 U.S.C. § 5314 and 31 C.F.R. § 1010.350. [ECF No. 1]. Currently before the Court is the Government's motion for summary judgment. [ECF No. 164]. For the reasons set forth below, the Government's motion, [ECF No. 164], is <u>GRANTED</u>.

### I.   BACKGROUND

#### A.   Factual Background

Except as otherwise noted, the following facts are not in dispute.

Defendant has been a citizen of the United States since 1988 or 1989. [ECF No. 165 ¶ 1 ("PSOF")]. Defendant currently resides in the United States and resided here during the 2007 calendar year. [Id.]. In 1999, while in Argentina, Defendant signed paperwork to open the Account in her name with UBS in Switzerland. [Id. ¶ 2; ECF No. 168 at 1–2 ("DSOF")].

Defendant's father and her brother advised her not to tell anyone about the Account. [PSOF ¶ 3]. The Government states that in 2001, it entered into a Qualified Intermediary Agreement ("QIA") with UBS that required UBS account holders to (1) disclose their identities to U.S. authorities by completing a W-9 form, or (2) sell their U.S. securities. [Id. ¶ 4]. Defendant disputes this fact.[1] [DSOF at 3]. Defendant did not complete a W-9 form. [PSOF ¶ 5; DSOF at 3–4]. In 2004, after UBS notified Defendant that it would no longer send her monthly transfer of $15,000.00 from the Account to her bank account in the United States without listing the ordering party, Defendant told UBS that she no longer wanted to make these transfers. [PSOF ¶ 6; DSOF at 4]. From 2006–2008, relatives in South America transferred money to Defendant's U.S. bank account and Defendant then reimbursed them by transferring funds to them from the Account. [Id. ¶¶ 7–8; DSOF at 4–5].

As discussed in previous Orders, the following four facts have already been established for the purposes of this litigation:

1. Defendant had legal control over, and the legal authority to direct the disposition of the funds in, the Account (and any sub-accounts), by investing the funds, withdrawing the funds, and/or transferring the funds to third-parties, between the date the Account was opened and at least December 31, 2008.

2. For the purposes of calculating the amount of a penalty, the Account (and any sub-accounts) contained $4,347,407.00 as of the penalty-calculation date.

---

[1] Defendant disputes this on the basis that the QIA is not in evidence. [DSOF at 3]. The Government asks this Court to take judicial notice of a Deferred Prosecution Agreement ("DPA") that it entered into with UBS, which makes reference to the QIA. [ECF No. 171-1 at 5 n.1 (citing United States v. UBS AG, No. 09-cr-60033, ECF No. 20 at 34, ¶ 2 (S.D. Fl. Feb. 18, 2009))]. While "[i]t is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand," Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990), the Court may only take notice that the DPA was filed but it cannot accept as fact matters asserted within the DPA. See Barnstable Cty. v. 3M Co., No. 17-cv-40002, 2017 U.S. Dist. LEXIS 207414, at *11 (D. Mass. Dec. 18, 2017) ("Generally, court filings are recognized not for the truth of the matters asserted within them, but instead only to establish the fact that related litigation has been initiated or to establish that the fact that documents have been filed in that related case.").

3. Defendant had a legal obligation to timely file a Financial Bank Account Report ("FBAR") regarding the Account in each calendar year that the Account was open, including with regard to calendar year 2007.

4. Defendant willfully failed to file an FBAR regarding the Account with respect to calendar year 2007.[2]

[ECF No. 110 at 12]; see [ECF No. 158 at 3; PSOF ¶¶ 18–21; DSOF at 11–12].

In addition to failing to file an FBAR for the 2007 calendar year, when Defendant prepared and signed her 2007 federal income tax return, she failed to mark "yes" or "no" in response to Question 7a on the return, which asked whether she had an interest in or signature or other authority over a foreign financial account. [PSOF ¶¶ 12–13]. In a letter dated May 3, 2012, the Internal Revenue Service ("IRS") informed Defendant that it was proposing to assess a penalty against her for willful failure to file an FBAR for the 2007 calendar year. [Id. ¶ 22]. The letter explained that the penalty amount could not exceed the greater of $100,000 or fifty percent of the balance on the account. [Id. ¶ 23]. The letter included a "write-up" with further explanation for the proposed penalty, including Defendant's failure to disclose the Account on her tax returns for 2005–2009, failure to disclose the Account on amended returns for 2007–2009, and delinquent FBARs for 2005–2009. [Id. ¶ 24].

Defendant states that she disclosed the Account with her amended returns for 2007–2009, [DSOF at 13], while the Government maintains that Defendant did not properly disclose the Account on the amended returns, [ECF No. 171-1 at 12, 13]. On September 19, 2013, a penalty of $2,173,703.00 was assessed against Defendant for willful failure to timely file an FBAR for the 2007 calendar year. [PSOF ¶ 25]. The total amount the Government now seeks, including

---

[2] Whether a person has willfully failed to comply with a tax reporting requirement is a question of fact. United States v. Williams, 489 F. App'x 655, 658 (4th Cir. 2012) (citing Rykoff v. United States, 40 F.3d 305, 307 (9th Cir. 1994)); see also Cruz v. Bos. Litig. Sol., No. 13-11127, 2016 U.S. Dist. LEXIS 187470, at *24 (D. Mass. May 24, 2016) ("Generally, willfulness is a question of fact for the jury.").

late fees and interest, is $3,138,097.48. [Id. ¶ 26; ECF No. 166 (declaration of Thomas P. Cole with supporting documentation on the penalty, late fees, and interest)].[3]

### B. Procedural Background

The Court provided a detailed discussion of the procedural history of this matter in its Order denying Defendant's motion to vacate sanctions. [ECF No. 158]. In short, throughout the two years during which Defendant represented herself *pro se*, Defendant repeatedly missed deadlines, refused to comply with discovery rules, and failed to observe this Court's explicit orders regarding her discovery obligations. See, e.g., [ECF Nos. 61, 62, 63, 75, 80, 81, 81-1, 82, 83, 84, 86, 92, 93, 93-2, 96, 97, 99, 102, 106, 109]. In response to Defendant's persistent violations, the Government filed a motion seeking sanctions against Defendant, which it later amended following further discovery lapses by Defendant. [ECF Nos. 83, 86, 93]. The Defendant did not oppose the Government's motion for sanctions or show sufficient cause as to why its motion should be denied. [ECF Nos. 97, 99, 102, 106, 109]. The Court granted the Government's motion on October 15, 2018 and imposed sanctions. [ECF No. 110]. The sanctions the Court imposed on Defendant included accepting as fact the four statements outlined above. See [id. at 12].

On March 15, 2019, Defendant filed a motion to vacate the Court's sanctions order, [ECF No. 130], which the Court denied, [ECF No. 158]. The Government filed its motion for summary judgment on February 21, 2010, [ECF No. 164], which Defendant opposed, [ECF No. 167]. The parties then filed a reply and sur-reply. [ECF Nos. 171, 174].

---

[3] The Court omits reference to Defendant's statement of additional facts, which provides facts in support of Defendant's contention that her failure to file a timely FBAR for the 2007 calendar year was not willful, [DSOF at 16–33], because, as the Court has already indicated here and in previous orders, Defendant's willfulness is now established as fact. See [ECF Nos. 110, 158].

## II.     LEGAL STANDARD

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted). Thus, "[a] genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted). By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case." United States v. One Parcel of Real Prop. (Great Harbor Neck, New Shoreham, R.I.), 960 F.2d 200, 204 (1st Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must "'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). Conversely, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, N.H., 303 F.3d 91, 94 (1st Cir. 2002) (internal quotation marks and citation omitted). That is, the nonmoving party must set forth specific, material facts showing that there

is a genuine disagreement as to some material fact.  One Parcel of Real Prop., 960 F.2d at 204 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."  Cochran, 328 F.3d at 6 (citation omitted).  The First Circuit has noted that this review "is favorable to the nonmoving party, but it does not give him a free pass to trial."  Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).  "The factual conflicts upon which he relies must be both genuine and material[,]" Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation."  Cochran, 328 F.3d at 6 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

## III.  DISCUSSION

As an initial matter, the Court notes that in light of its Order on sanctions, which found the elements necessary to prove the Government's claim against Defendant, there is no dispute of material fact.  See [ECF No. 110].  Although Defendant disputes aspects of the Government's statement of facts, [ECF No. 158], in light of the Court's previous Order these disputes are not material and therefore do not preclude the entry of summary judgment.  See Anderson, 477 U.S. at 247–48 ("By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." (emphasis omitted)).  The only remaining issue for the Court to resolve is whether the penalty assessed is appropriate and consistent with the law.

A.   **Statutory Overview**

By statute, citizens of the United States must file a report disclosing any transactions or relations with a foreign financial agency.  31 U.S.C. § 5314; 31 C.F.R. § 1010.350.  IRS regulations provide that these reports, or FBARs, "shall be filed with the [Financial Crimes Enforcement Network] on or before June 30 of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year."  31 C.F.R. § 1010.306(c).  Penalties for violations of 31 U.S.C. § 5314 and 31 C.F.R. § 1010.350 are outlined in 31 U.S.C. § 5321(a)(5), which provides for enhanced penalties where a defendant's violation is "willful."  31 U.S.C. § 5321(a)(5)(C).  Willful violations may be penalized by a "maximum penalty" which "shall be increased" above the amount provided for non-willful violations "to the greater of—(I) $100,000, or (II) 50 percent of the amount determined under subparagraph (D)," which is "the balance in the account at the time of the violation."  Id. § 5321(a)(5)(C)(i), (a)(5)(D)(ii).

B.   **Maximum Penalty Under Section 5321(a)(5)(C)**

Defendant argues that the penalty assessed, $2,173,703.00, plus interest and late fees, is in excess of the maximum penalty provided by regulation.  [ECF No. 167 at 2].  The Government contends that the regulation Defendant cites has been superseded by amendments to the regulation's implementing statute, and that the amended statute—not the superseded regulation—sets the maximum penalty.  [ECF No. 165 at 19; ECF No. 171 at 3].

"From 1986 to 2004, § 5321 capped penalties for willful FBAR violations at $100,000.  In 1987, the Treasury Department issued a regulation echoing this statutory language."  Norman v. United States, 942 F.3d 1111, 1117 (Fed. Cir. 2019) (citing 31 C.F.R. § 103.47(g)(2) (1987), renumbered as 31 C.F.R. § 1010.820(g) (2010)).  "In 2004, Congress amended § 5321 to

increase the maximum penalty for willful violations to the greater of $100,000 or fifty percent of the balance in the account at the time of the violation." Id. (citing 31 U.S.C. § 5321(a)(5)(A)–(D)). The Department of the Treasury has not amended or repealed the 1987 regulation. See id.; 31 C.F.R. § 1010.820(g).

The majority of courts to have considered this issue, including the Federal Circuit in Norman v. United States, have found that the regulation was superseded by the amended statute such that the maximum penalty set forth in the regulation is no longer valid. See 942 F.3d at 1118; United States v. Rum, No. 17-cv-00826, 2019 U.S. Dist. LEXIS 180339, at *4–5 (M.D. Fla. Sept. 26, 2019); United States v. Kahn, No. 17-cv-07258, 2019 U.S. Dist. LEXIS 230491, at *20 (E.D.N.Y. Sept. 23, 2019); United States v. Cohen, No. 17-cv-01652, 2019 U.S. Dist. LEXIS 166253, at *11 (C.D. Cal. Aug. 6, 2019); United States v. Schoenfeld, 396 F. Supp. 3d 1064, 1074 (M.D. Fla. 2019); United States v. Garrity, No. 15-cv-00243, 2019 U.S. Dist. LEXIS 32404, at *4 (D. Conn. Feb. 28, 2019); Kimble v. United States, 141 Fed. Cl. 373, 388 (2018); United States v. Horowitz, 361 F. Supp. 3d 511, 515–16 (D. Md. 2019); United States v. Park, 389 F. Supp. 3d 561, 571–74 (N.D. Ill. 2019). Only two courts have found otherwise. United States v. Wadhan, 325 F. Supp. 3d 1136 (D. Colo. 2018); United States v. Colliot, No. 16-cv-01281, 2018 U.S. Dist. LEXIS 83159 (W.D. Tex. May 16, 2018). But see Cohen, 2019 U.S. Dist. LEXIS 166253, at *11 ("However, every single district court since Wadha[n] and Colliot (and a majority of the district courts to have considered the issue) have concluded that the statute and the regulation conflict with each other, the statute controls, and the IRS is not bound by the $100,000 limit in the regulation." (emphasis omitted)).

Like many other district courts, this Court is persuaded that the regulation's maximum penalty provision is no longer valid. "[R]egulations, in order to be valid, must be consistent with

8

the statute under which they are promulgated." United States v. Larionoff, 431 U.S. 864, 873 (1977); Norman, 942 F.3d at 1118 ("It is well-settled that subsequently enacted or amended statutes supersede prior inconsistent regulations."). The 2004 amendment to § 5321(a)(5)(C) updates the maximum penalty provision to require that "the maximum penalty . . . shall be increased . . . ." 31 U.S.C. § 5321(a)(5)(C). As the Norman court acknowledged, "[t]he use of the word 'shall' means what follows is mandatory, not discretionary." Norman, 942 F.3d at 1117. This mandatory language makes clear Congress' intent to increase the maximum penalty, which rendered invalid the lower maximum penalty in the regulation. See id.; United States v. Bajakajian, 524 U.S. 321, 336 (1998) (stating that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature").

Defendant further argues that, under principles of administrative law, the statute leaves a gap that the agency was required to fill through further regulation. [ECF No. 167 at 5]. Defendant states that this "gap" allows the Department of the Treasury the discretion to create a maximum penalty by regulation as long as the maximum set out in the regulation does not exceed the maximum set out in the statute. [Id.]. As the Court has already noted, however, the statute supersedes the regulation and provides mandatory language ("shall") that does not leave room for agency discretion. See 31 U.S.C. § 5321(a)(5)(C). Thus, the regulation's maximum penalty provision, which conflicts with the amended statute, is invalid, and is not due Chevron deference as Defendant contends. "Because the statute is unambiguous" in requiring an increase in the maximum penalty, the Court "must give effect to the unambiguously expressed intent of Congress." Norman, 942 F.3d at 1118 (quoting Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc., 467 U.S. 837, 842–43 (1984)); see Chevron, 467 U.S. at 842–43 ("When a court reviews an agency's construction of the statute which it administers, it is confronted with two

questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

**C. Willfulness**

The Court has addressed Defendant's contention about the Court's willfulness finding in both its Order on sanctions, [ECF No. 110], and its Order on the motion to vacate sanctions, [ECF No. 158]. Defendant now attempts to relitigate this issue despite the Court's detailed analysis in its previous Orders. The Court will nonetheless briefly address Defendant's contentions below.

1. Willfulness Standard

In the context of § 5321(a)(5)(C) and FBAR reporting requirements, courts have noted that "'[w]illfulness may be proven through inference from conduct meant to conceal or mislead sources of income or other financial information,' and it 'can be inferred from a conscious effort to avoid learning about reporting requirements.'" United States v. Williams, 489 F. App'x 655, 658 (4th Cir. 2012) (quoting United States v. Sturman, 951 F.2d 1466, 1476 (6th Cir. 1991)).[4] Willfulness applies to conduct that is reckless or willfully blind. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007) ("[W]here willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well

---

[4] As the Court noted in its Order on the motion to vacate sanctions, [ECF No. 158], the First Circuit has not yet considered willfulness in the context of 31 U.S.C. § 5321(a)(5)(C) penalties. In the context of other tax reporting violations that require a finding of willful conduct, however, the First Circuit has held that a finding of willfulness can apply to conduct that is reckless or willfully blind. Thomsen v. United States, 887 F.2d 12, 17 (1st Cir. 1989) ("In the civil context, 'willful conduct denotes intentional, knowing and voluntary acts. It may also indicate a reckless disregard for obvious or known risks.'" (quoting Monday v. United States, 421 F.2d 1210, 1215 (7th Cir. 1970))).

. . . ."); see also Norman, 942 F.3d at 1115 ("[W]e hold . . . that willfulness in the context of § 5321(a)(5)(C) includes recklessness."); Bedrosian v. United States et al., 912 F.3d 144, 152 (3d Cir. 2018) (holding that for the purposes of civil FBAR penalties, willfulness incorporates recklessness); Williams, 489 F. App'x at 658 ("Similarly, 'willful blindness' may be inferred where 'a defendant was subjectively aware of a high probability of the existence of a tax liability, and purposefully avoided learning the facts point[ing] to such liability.'" (quoting United States v. Poole, 640 F.3d 114, 122 (4th Cir. 2011))).

Defendant, citing to criminal cases which apply a different willfulness standard, claims that this Court incorrectly applied the willfulness standard in its Order on the motion to vacate sanctions. [ECF No. 167 at 15–18]. Given that this is a civil matter, however, the Court applied the correct standard. See Norman, 942 F.3d at 1115.

2. No Factual Dispute Exists

Defendant next argues that, because there is a factual dispute as to her willfulness, summary judgment is not appropriate. [ECF No. 167 at 18–20]. First, the Court's Order on sanctions established as fact that "Defendant willfully failed to file an FBAR regarding the Account with respect to calendar year 2007." [ECF No. 110 at 12]. Defendant acknowledged as much in her response to the Government's statement of facts. [DSOF at 12 (not disputing this fact)].

As the Court noted in its Order on the motion to vacate sanctions, even in the absence of the sanction as to this fact, Defendant's willfulness in failing to file a 2007 FBAR "can be inferred from [her] conscious effort to avoid learning about reporting requirements." Williams, 489 F. App'x at 658 (quoting Sturman, 951 F.2d at 1476). She took deliberate steps to maintain the secrecy of the Account, in spite of opportunities for disclosure, which evidences willful

11

"conduct meant to conceal or mislead sources of income." Id.  In addition, Defendant had access to bank records and statements for the Account, but did not question why UBS was not deducting funds from the Account to pay U.S. taxes, evidencing a reckless disregard for the risks of not investigating her tax obligations with respect to the Account.  See Thomsen, 887 F.2d at 17 ("In the civil context, 'willful conduct . . . may also indicate a reckless disregard for obvious or known risks.'").  The Court therefore found that the Government had provided more than sufficient evidence to establish that Defendant was willfully blind or reckless in her decision not to investigate her U.S. tax obligations for the Account or to report the Account to the IRS.  See id.; Williams, 489 F. App'x at 658.

This fact is established and has support in the record.[5]  Defendant's contention that this fact is disputed is therefore unavailing.

### D.      Amount of Penalty

Defendant argues that the Court should apply the rule of lenity to reduce the penalty, that the Eighth Amendment prohibits the imposition of the penalty as excessive, and that the penalty is excessive in violation of the Due Process Clause.  [ECF No. 167 at 6, 8, 13; ECF No. 174 at 1, 3].  The Government contends that each of these arguments is meritless.  [ECF No. 165 at 14; ECF No. 171 at 5, 11].

#### 1.      Lenity Does Not Apply

Defendant claims that the rule of lenity applies because there is ambiguity in the law around the maximum penalty for failure to file an FBAR and that, as a result, the lower maximum penalty, provided in the regulation, should apply.  [ECF No. 167 at 6–8; ECF No. 174

---

[5] For these same reasons, the Court denies Defendant's request for a trial on the issue of her willfulness.  See [ECF No. 167 at 19].

at 1–3]. The Government counters that the rule is not applicable in civil cases and that, even if it were, the statute at issue is unambiguous. [ECF No. 171 at 5].

"Application of the rule of lenity is restricted to the interpretation of criminal statutes." Lawson v. FMR LLC, 670 F.3d 61, 76 (1st Cir. 2012), rev'd on other grounds, 571 U.S. 429 (2014); see Soto-Hernandez v. Holder, 729 F.3d 1, 5 (1st Cir. 2013) ("[W]e have consistently limited the application of the rule of lenity to criminal statutes.").[6] In addition, "the rule of lenity . . . is not applicable unless there is a grievous ambiguity or uncertainty in the language and structure of the Act, such that even after a court has seize[d] every thing from which aid can be derived, it is still left with an ambiguous statute." Soto-Hernandez, 729 F.3d at 6 (alteration in original) (quoting Chapman v. United States, 500 U.S. 453, 463 (1991)).

Both requirements for applying the rule of lenity are missing here, where the case and penalty are civil and the Court has already found that the statute at issue is not ambiguous, let alone grievously so. See supra Section III.B; Soto-Hernandez, 729 F.3d at 6. Even if the Court were to construe the invalid regulation in combination with the statute as creating ambiguity as Defendant urges, [ECF No. 171 at 3], there is no escaping that because this is a civil matter, one requirement for the rule of lenity would still be missing. See Lawson, 670 F.3d at 76.

    2.    Eighth Amendment Does Not Apply

Defendant further maintains that the civil penalty assessed against her is a punishment subject to the limitations of the Eighth Amendment. [ECF No. 167 at 8; ECF No. 174 at 3]. The Government states that the Eighth Amendment is not implicated outside the context of a criminal

---

[6] As Defendant notes, the First Circuit has stated that the rule may have some application in the immigration context, but there is no clear basis for expanding the rule in the context of a civil penalty for tax evasion. See [ECF No. 171 at 6–7 (citing Soto-Hernandez, 729 F.3d at 5)].

fine but that even if it were, the penalty at issue is not excessive. [ECF No. 165 at 14; ECF No. 171 at 8].

Both parties cite to United States v. Bajakajian, 524 U.S. 321 (1998), with differing contentions as to its application here. In Bajakajian, the Supreme Court considered whether forfeiture under a statute providing for "criminal penalties" was excessive in violation of the Eighth Amendment's prohibition on excessive fines. 524 U.S. at 327. The court noted that a fine is a "punishment for an offense" and discussed the forfeiture order in the context of the defendant's related criminal conviction. Id. at 327–28. The Government contends that Bajakajian and its criminal context are inapposite here, in the context of a civil penalty. [ECF No. 165 at 14]. As the Government notes, Bajakajian and additional Supreme Court precedent suggest that an Eighth Amendment analysis may be appropriate for certain civil fines or forfeiture orders only when they are connected to an underlying criminal offense. See Hudson v. United States, 522 U.S. 93, 103 (1997) ("The Eighth Amendment protects against excessive civil fines, including forfeitures."); Alexander v. United States, 509 U.S. 544 (1993) (discussing criminal forfeiture in connection with a criminal conviction); Austin v. United States, 509 U.S. 602 (1993) (discussing civil forfeiture in connection with a criminal conviction); United States v. Halper, 490 U.S. 435 (1989) (discussing civil sanction in connection with criminal conviction).

In McNichols v. Commissioner of Internal Revenue, the First Circuit declined to "take the giant leap" of applying the Eighth Amendment to a tax penalty, noting that it would not extend the Supreme Court's holding in Austin "to any actions other than forfeitures" brought under the statute at issue in Austin. 13 F.3d 432, 434 (1st Cir. 1993). This Court is bound by the decision and therefore finds that the Eighth Amendment does not apply to civil penalties under 31 U.S.C. § 5321(a)(5)(A). See One Parcel of Real Prop., 960 F.2d at 206 ("[S]uch

14

proportionality protections as the Eighth Amendment contains have generally been considered inapplicable to civil actions initiated by the United States."); United States v. Schwarzbaum, 2020 U.S. Dist. LEXIS 86655, at *22 (S.D. Fla. May 18, 2020) ("[T]he Court determines that the FBAR penalty in this case is not a 'fine' subject to the Eighth Amendment."). This conclusion finds additional support from other courts that have consistently viewed tax penalties as remedial, rather than punitive, and therefore outside the bounds of the Eighth Amendment. See Helvering v. Mitchell, 303 U.S. 391, 401 (1938) ("The remedial character of sanctions imposing additions to a tax has been made clear by this Court in passing upon similar legislation. They are provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud."); Dewees v. United States, 272 F. Supp. 3d 96, 100 (D.D.C. 2017) (stating that "[t]ax penalties . . . having been held to fulfill a remedial purpose are therefore not subject to the Excessive Fines Clause" and collecting cases).[7]

Even if the Court were to find the Eighth Amendment applicable here, Defendant could not overcome an analysis of the factors the Supreme Court outlined in Bajakajian for determining whether a fine is proportional or excessive. These factors include: "(1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; (2) other penalties authorized by the legislature . . . ; and (3) the harm caused by the defendant." United States v. Heldeman, 402 F.3d 220, 223 (1st Cir. 2005) (citing Bajakajian, 524 U.S. at 337–40).

---

[7] The Ninth Circuit considered an Eighth Amendment challenge to a $1.2 million penalty for willful failure to file an FBAR for one calendar year and found that the penalty was not excessive. United States v. Bussell, 699 F. App'x 695 (9th Cir. 2017). The lower court had analyzed the Eighth Amendment challenge without addressing whether such a challenge was appropriate. See No. 15-cv-02034, 2016 U.S. Dist. LEXIS 15052 (C.D. Cal. Jan. 11, 2016).

First, Defendant is undoubtedly within the class of persons at whom the statute was directed. The purpose of the statute is "to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings, or in the conduct of intelligence or counterintelligence activities, including analysis, to protect against international terrorism." 31 U.S.C. § 5311. Defendant is within the first class of individuals, those who are the subject of tax investigations. Legislative history also supports a finding that Defendant is precisely within the class of individuals the legislature intended to target:

> One of the most damaging effects of an American's use of secret foreign financial facilities is its undermining of the fairness of our tax laws. Secret foreign financial facilities, particularly in Switzerland, are available only to the wealthy. To open a secret Swiss account normally requires a substantial deposit, but such an account offers a convenient means of evading U.S. taxes. In these days when the citizens of this country are crying out for tax reform and relief, it is grossly unfair to leave the secret foreign bank account open as a convenient avenue of tax evasion.

H.R. Rep. No. 91-975, at 12–13, reprinted in 1970 U.S.C.C.A.N. at 4397–98 (1970).

Second, Defendant was facing a penalty for each year in which she was determined not to have filed an FBAR for the Account (2005–2009), but the Department of the Treasury exercised its discretion to assess a penalty for only one year (2007). See [PSOF ¶ 24]. Defendant would have been subject to at least a non-willful penalty for those additional years, and possibly—given the facts in this case—a willful penalty. Had the Government chosen to pursue a criminal case, Defendant would have been facing five years in prison and a $250,000 fine. 31 U.S.C. § 5322(a). Given the other penalties authorized by statute, the penalty assessed against Defendant for one violation is not excessive.[8]

---

[8] Although the addition of late fees and interest increases the penalty assessed by approximately $1 million, this Court and the Department of the Treasury do not have discretion to reduce the penalty by these additional sums. 31 U.S.C. § 3717(a) ("The head of an executive, judicial, or legislative agency **shall** charge a minimum annual rate of interest on an outstanding debt on a United States Government claim . . . ." (emphasis added)); id. § 3717(e) "The head of an

Lastly, the harm caused by Defendant's failure to file timely FBARs disclosing the Account is significant and precisely the type of harm Congress sought to avoid in enacting the reporting requirement. H.R. Rep. No. 91-975, at 12, reprinted in 1970 U.S.C.C.A.N. at 4397 ("The debilitating effects of the use of these secret institutions on Americans and the American economy are vast. It has been estimated that hundreds of millions in tax revenues have been lost."). The harm, however, is not limited to lost revenue, but also includes the resources the Government expended in investigating Defendant's conduct. See United States v. Garrity, No. 15-cv-00243, 2019 U.S. Dist. LEXIS 32404, at *30 (D. Conn. Feb. 28, 2019) (analyzing harm caused by willful failure to file FBARs under the Bajakajian factors and finding penalty of nearly $1 million was not excessive where "the Government expended significant resources investigating [defendant's] foreign account").

Assuming, *arguendo*, that the Eighth Amendment were applicable to Defendant's civil penalty, the Bajakajian factors weigh against a finding that the penalty is grossly disproportionate in violation of the Eighth Amendment. See Crawford v. U.S. Dep't of the Treasury, No. 15-cv-00250, 2015 U.S. Dist. LEXIS 131496, at *52 (S.D. Ohio Sept. 29, 2015) ("A 50% willful FBAR penalty—the maximum permitted by statute—is severe. But given the ills it combats, it is an appropriate penalty in at least some circumstances."); see also

---

executive, judicial, or legislative agency **shall** assess on a claim owed by a person—(1) a charge to cover the cost of processing and handling a delinquent claim; and (2) a penalty charge of not more than 6 percent a year for failure to pay a part of a debt more than 90 days past due . . . ." (emphasis added)); see United States v. Texas, 507 U.S. 529, 536 (1993) ("Section 3717(a) **requires** federal agencies to collect prejudgment interest against persons and specifies the interest rate." (emphasis added)).

Schwarzbaum, 2020 U.S. Dist. LEXIS 86655, at *23 (ordering payment of $15.6 million, inclusive of late fees and interest, for willful failure to file FBARs for three calendar years).[9]

### 3. Due Process

As a final point, Defendant argues that the penalty violates the Fifth Amendment's Due Process Clause because the penalty is grossly in excess of what is necessary to punish and deter Defendant's conduct. [ECF No. 167 at 13]. The Government contends that the penalty is not excessive under the Due Process Clause for the same reasons it is not excessive under the Eighth Amendment. [ECF No. 171 at 11].

In support of her argument, Defendant cites BMW of North America v. Gore, in which the Supreme Court determined that a $4 million punitive damages award authorized by state law was excessive under a Due Process analysis. 517 U.S. 559, 574 (1996). However, the Supreme Court's analysis in that case was specific to state-imposed fines and damages, particularly where those damages are intended to deter conduct in other states. Id. at 572 ("[A] State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other States."). In addition, that case involved punitive damages against a tortfeasor where one factor in the court's excessive fine analysis included the reprehensibility of the tortfeasor's actions—a factor that is inapposite in the context of a tax penalty. See id. at 576–79. Other factors, including the ratio of the harm to the award and other available remedies are identical to the factors already considered under Bajakajian and were not in Defendant's favor.

---

[9] Defendant asks for a hearing to provide evidence regarding the Bajakajian factors. [ECF No. 167 at 14]. A hearing is unnecessary given the Court's finding that the factors do not apply to her civil penalty.

See id.; supra Section III.D.2. BMW therefore does not support a finding that Defendant's Due Process rights would be violated by the penalty.

## IV.  CONCLUSION

Accordingly, for the reasons discussed herein, the Government's motion for summary judgment, [ECF No. 164], is GRANTED. Defendant is ordered to pay $3,138,097.48, consisting of $2,173,703.00 for her willful failure to timely file an FBAR for the 2007 calendar year, $826,469.56 in late fees, and $137,925.92 in interest. See [ECF No. 166-2 at 2].

**SO ORDERED.**

September 16, 2020                                             /s/ Allison D. Burroughs
                                                                               ALLISON D. BURROUGHS
                                                                               U.S. DISTRICT JUDGE