UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| UNITED STATES, ) | |
|           Plaintiff ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 1:15-CV-13367-ADB |
| MONICA TOTH, ) | |
|           Defendant ) | |
| _____ ) | |

**DEFENDANT MONICA TOTH'S MEMORANDUM IN SUPPORT
OF MOTION PURSUANT TO FED. R. CIV. P. 60(b)(3) FOR RELIEF FROM
JUDGMENT AND AN EVIDENTIARY HEARING TO DETERMINE WHETHER
DISCOVERY WAS IMPROPERLY WITHHELD OR ALTERNATIVELY AN ORDER
FROM THIS COURT REQUIRING THE GOVERNMENT TO EXPLAIN UNDER
OATH THE MATERIALS IN ITS POSSESSION CONCERNING
<u>THE DEFENDANT AND TO PRODUCE THOSE MATERIALS</u>**

On November 23, 2020, the United States (hereinafter "Plaintiff"), produced for the first

time, post-judgment, a Bates-stamped document (hereinafter "the 3708 Letter") it sought to rely

on in calculating its over three million dollar judgment against Defendant Monica Toth

(hereinafter "Defendant"). Over the course of this litigation, Defendant has repeatedly raised the

issue that Plaintiff withheld critical materials, see e.g., ECF 147; ECF 157, and argued that

Plaintiff violated its ethical duties toward a *pro se* defendant, including making significant

misrepresentations to this Court, while withholding the very documents that would have

contradicted those misrepresentations. See ECF 130, p. 8; ECF 147, p. 1;  ECF 157, p. 2-3. As

described below, this post-judgment production of the 3708 Letter reveals that Plaintiff has had

in its possession material documents that it did not produce to Defendant, and casts doubt on

Plaintiff's representations made throughout this litigation regarding the extent to which

Defendant's discovery violations prejudiced Plaintiff, which led to this Court's sanctions Order.

Defendant moves this Court pursuant to Fed. R. Civ. P. 60(b)(3) for relief from judgment and an evidentiary hearing to determine whether discovery was improperly withheld or alternatively an order from this Court requiring the government to explain under oath what material it has in its possession concerning the defendant and to produce those materials.

## LEGAL STANDARD

The First Circuit in <u>Anderson v. Cryovac, Inc.</u>, 862 F.2d 910, 923 (1st Cir. 1988), aff'd, 900 F.2d 388 (1st Cir. 1990), sets out the test the court is to apply in deciding a motion brought under Rule 60(b)(3). Federal Rule 60(b)(3) permits a district court, upon "motion and just terms," to relieve a party from a final judgment, order, or proceeding for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."

> Failure to disclose or produce materials requested in discovery can constitute "misconduct" within the purview of this subsection. "Misconduct" does not demand proof of nefarious intent or purpose as a prerequisite to redress. For the term to have meaning in the Rule 60(b)(3) context, it must differ from both "fraud" and "misrepresentation." Definition of this difference requires us to take an expansive view of "misconduct." The term can cover even accidental omissions—elsewise it would be pleonastic, because "fraud" and "misrepresentation" would likely subsume it.

<u>Anderson</u>, 862 F.2d at 923. See also <u>West v. Bell Helicopter Textron, Inc.</u>, 803 F.3d 56, 67 (1st Cir. 2015).[1] The moving part must show misconduct by clear and convincing evidence. The

---

[1] <u>West</u> presents similar facts to the procedural posture Defendant finds herself in here. <u>West</u>, 803 F.3d 56. In <u>West</u>, the plaintiff, a pilot who was involved in a helicopter crash, brought suit against the manufacturers of that helicopter. West claimed that the crash was likely caused by the malfunction of a component of the helicopter, which the defendants denied. Defendants instead faulted the plaintiff for his de-icing procedures and argued that the helicopter crash was caused by accumulation of snow and ice. After a trial, the jury found for defendants. Post-trial, defendants issued notice bulletins providing notice of a "circuit design error" in the helicopter at issue at trial. As a result of the bulletins, plaintiff moved for a new trial under Rule 60(b)(3), or in the alternative for an evidentiary hearing to assist the court in determining whether misconduct had occurred, arguing that the bulletins revealed the circuit's design was defective and the timing of the issuance of the bulletins compelled an inference that the defendants knew about the defect but failed to disclose it during discovery or trial. <u>Id</u>. at 63-64. The district court did not hold an evidentiary hearing and denied the motion. <u>Id</u>. at 65. On appeal from the district court's denial of the motion, the First Circuit held that the district court had mis-applied the 60(b)(3) <u>Anderson</u> test, described above, and remanded the case for the district court to determine whether there are additional responsive documents that have not been produced, while stressing "that a party is under a continuing obligation to supplement its response to an interrogatory or request for

"misconduct need not be result-altering in order to merit Rule 60(b)(3) redress." Anderson, 862 F.2d at 924, citing Bunch v. United States, 680 F.2d 1271, 1283 (9th Cir.1982) (when information withheld in discovery, aggrieved party need not establish that outcome would have been different).

In addition to showing that discovery misconduct has occurred, the moving party must also demonstrate that such "discovery misconduct ... substantially ... interfered with the aggrieved party's ability fully and fairly to prepare for and proceed at trial." Id. "Substantial interference" may be shown in at least two ways: the moving party may demonstrate "that the concealment precluded inquiry into a plausible theory of liability, denied it access to evidence that could well have been probative on an important issue, or closed off a potentially fruitful avenue of direct or cross examination." West, 803 F.3d at 67 (citations omitted). Alternatively, "[s]ubstantial interference may also be established by presumption or inference." Id. (citations omitted). Whether a presumption of substantial interference is made depends on the culpability of the non-disclosing party. Id. As "[n]ondisclosure comes in different shapes and sizes: it may be accidental or inadvertent, or considerably more blameworthy (though still short of fraud or outright misrepresentation)[,]" it is "where concealment was knowing and purposeful," or "where discovery material is deliberately suppressed" that substantially interfered should be presumed. Id. "If the movant is unable to prove that the misconduct was knowing or deliberate—

---

production of documents…." Id. at 71. Although a formal document request was not made by Defendant acting as *pro se* in this case, in can be inferred from her references to materials she believed were in the possession of the government were tantamount to *informal* requests for documents. *See Infra*. In addition, the initial disclosure rule creates a continuing duty to disclose documents. See Fed.R.Civ.P. 26(a) (1)(A)(iii), (e); see also Holmes Grp., Inc. v. RPS Prod., Inc., 2010 WL 7867756, at *25 (D. Mass. June 25, 2010) ("plaintiff was under a continuing duty to supplement its [initial disclosures] until they were complete, whether or not defendant made a specific request"). Additionally, as set out further below, the government in a civil case has a heighted duty to provide relevant materials, especially when litigating against a *pro se* defendant. Finally, after counsel appeared in the case and it became clear the government was withholding relevant materials, a document request was served on the government. See *Dec*.

it may still prevail as long as it proves by a preponderance of the evidence that the nondisclosure worked some substantial interference with the full and fair preparation or presentation of the case." Id.

## BACKGROUND

**Plaintiff's Request for Sanctions**

Plaintiff brought suit against Defendant to collect a civil penalty assessed for her failure to timely report her financial interest in a foreign bank account (FBAR) for the 2007 calendar year. Under 31 U.S.C. § 5321(a)(5), the maximum penalty for the willful failure to timely report an FBAR is 50 percent of the balance of the account in question, in this case, that was assessed as $2,173,703. ECF 1.

This Court allowed a motion for sanctions against Defendant for various discovery violations that resulted in the judgment against her. During the course of the litigation against Defendant, who proceeded *pro se* for two years, Plaintiff portrayed Defendant's behavior to this Court as evasive and obstructionist, for example, by persistently arguing that she attempted to evade service, and falsely claiming that she admitted that she was unaware of any obligation to file an FBAR until IRS auditors caught her red-handed. See e.g., ECF 8; ECF 42 at 1; ECF 51 at 1; ECF 83 at 2; ECF 86 at p. 14-15; ECF 93 at p. 24; ECF 110 at 1. Ultimately, Plaintiff used this narrative in its arguments for sanctions against Defendant, suggesting that the sanction it requested—a finding of willfulness in failing to file an FBAR, which is tantamount to a default judgment—was essentially a foregone conclusion because she had no defense. See ECF 86, ECF 93. Plaintiff's complaints about Defendant's discovery violations included what it labeled her "inadequate" initial disclosures, and her late and insufficient responses to its interrogatories and documents requests, which it argued amounted to a refusal to produce discovery. See e.g., ECF

86, ECF 93.[2] In addition, Plaintiff repeatedly argued to the Court that Defendant's failure to produce discovery prejudiced its ability to litigate its case. See e.g., ECF 93 at 19 ("Ms. Toth's conduct and her refusal to make discovery as ordered has effectively prevented the United States from conducting third-party discovery, or even continuing with the discovery needed from Ms. Toth."); ECF 141 at 21 ("This has not only inconvenienced the Court by repeatedly requiring time to oversee this case, but it has prejudiced the United States"). Plaintiff argued to this Court that its IRS files "appear incomplete and prudence demands obtaining all documents Ms. Toth had sent to or received from the IRS in the matter at issue." ECF 93 at p. 8. Plaintiff insisted to the Court, with no apparent basis, that Defendant was withholding "several boxes" of documents responsive to its discovery request, and that it "expected about 3 standard bankers' boxes of documents in response to the discovery requests." ECF 93 at pp. 3, 7.

This Court allowed Plaintiff's Motion for Sanctions against Defendant on October 15, 2018, on the basis at least in part that Defendant had withheld documents from Plaintiff and that Plaintiff was prejudiced as a result. ECF 110. In its Order imposing sanctions on Defendant, this Court relied upon Plaintiff's representations that it was prejudiced. For example, the Court found that the "Defendant's failure to provide timely, substantive information regarding the nature of her defenses and the facts of this case has prevented the Government from using that information at Defendant's deposition, and has frustrated the Government's ability to seek third party discovery and prepare its case for trial." ECF 110 at p. 10.

---

[2] As to the discovery responses, Defendant's position in her pleadings in support of her *Motion to Vacate Sanctions* was that the three depositions that Plaintiff took of Defendant provided a more than adequate opportunity to clarify its questions. See ECF 130, at p. 12-14; ECF 147 at p. 5, n.6. Additionally, as Defendant demonstrated in her *Motion to Vacate Sanctions*, the documents referred to by Defendant in her responses to Plaintiff's requests for interrogatories and documents were not documents she was withholding, but rather were documents contained in Plaintiff's initial disclosures, those that she had provided to the IRS during the audit, and those that she no longer had in her possession. See e.g., ECF 130 at p. 13.

Counsel for Defendant entered their appearances in November, 2018, and subsequently moved this Court to vacate its Sanctions Order, which was opposed by Plaintiff and denied by this Court. ECF 158.

**Plaintiff's Failure to Produce Materials Requested in Discovery**

*The 3708 Letter*

Here, like in <u>West</u>, 803 F.3d 56, Defendant has received information, post-judgment, revealing that Plaintiff failed to disclose material discovery, constituting 'misconduct' within the purview of" Rule 60(b)(3). <u>West</u>, 803 F.3d at 67.[3] The post-judgment production of the Bates-stamped 3708 Letter reveals other documents were not produced that have apparently been in Plaintiff's possession throughout the litigation. The 3708 Letter is a three-page document marked with Bates Stamps, "USA-00049," "USA-00051," and "USA-00051." See Ex. 1. Plaintiff has not produced any other discovery to Defendant that is marked with government Bates stamps. See *Dec*.[4] For example, Plaintiff's Initial Disclosures (which did not include the 3708 Letter), produced to Defendant in paper format on September 17, 2017, while in the courthouse for a hearing, comprised approximately 1200 pages of documents that did not contain a Bates stamp. See *Dec*. (It should be noted that the 3708 Letter was provided by different counsel than the counsel that has heretofore been handling the case. See *Dec*.)

After the 3708 Letter was produced on November 23, 2020, Defendant requested an explanation for the anomalous Bates-stamped document. Plaintiff refused to disclose how many documents it marked with the "USA" prefix, or why Bates-stamped documents had not been

---

[3] Discussion of Defendant's discovery requests and Plaintiff's obligations is discussed *infra*.
[4] "*Dec*." refers to the Declaration of Jennifer McKinnon, dated December 21, 2020, and filed with this Memorandum.

produced before, or how many Bates-stamped documents exist relating to Defendant. See *Dec*. As set out below, this withheld discovery, coupled with Plaintiff's other discovery violations in this case, compel the conclusion that Plaintiff's "discovery misconduct ... substantially ... interfered with [Defendant's] ability [to be able to defend against the sanctions motion and to rebut Plaintiff's claims of prejudice]." Anderson, 862 F.2d at 924.

**Plaintiff's Discovery Misconduct Substantially Interfered with Defendant's Ability to Be Able to Defendant Against the Sanctions Motion and to Rebut Plaintiff's Claims of Prejudice.**

*Plaintiff's Pattern of Withholding Discovery*

The production of the 3708 Letter is not the first time since counsel for Defendant entered their appearance that Plaintiff has produced previously undisclosed documents.

Upon entering the case, Defendant's counsel spent considerable time proving to Plaintiff that its contention that Defendant only filed FBARs and revealed her UBS account after she was "caught red handed" by IRS auditors was false. Plaintiff had been making these arguments throughout the litigation, even falsely claiming that *Defendant herself* had "represented throughout this case … that she was unaware of any obligation to file an FBAR until after the IRS audit." ECF 86 at p. 14-15; see also ECF 93 at p. 24. In addition to demonstrating to Plaintiff that documents contained in its own initial disclosures contradicted its assertions, counsel for Defendant substantiated what Defendant had been trying to explain to the IRS and Plaintiff for years, that she had notified the IRS of her UBS Account on November 4, 2010, and subsequently filed FBARS on November 30, 2010, but they had been mis-directed to another government agency, the Medicare Secondary Payer Recovery Contractor ("MSPRC"). See *Dec*. Shortly after entering their appearance in this case, counsel for Defendant was able to procure

copies of Defendant's FBARS filed with the MSPRC in 2010, and produce those to Plaintiff. *See Dec*; ECF 130, p. 5-6; ECF 131-10.

It was discovered months later that *Plaintiff already had records in its possession documenting Defendant's November 2010 FBARs mailings*. Instead of revealing these documents that corroborated Defendant's position, counsel for Plaintiff instead expressed doubt as to their validity, and required Defendant to produce the original documents, supposedly on the basis that there is some special ink only used by the government, which can be verified as original (whether this is true or false is unknown). See *Dec*. Further, Plaintiff requested Defendant answer a series of written questions pertaining to her allegations that the government had destroyed material records (concerns that arose as a result of the missing FBARs that had been mis-directed to the MSPRC). See *Dec*. Months later, in its *Opposition to Defendant's Motion to Vacate Sanctions*, Plaintiff revealed that it was already in possession of documents demonstrating Defendant's attempts to file FBARs and notify the IRS of her foreign account months prior to the audit.[5] The documents produced as exhibits to its *Opposition* included a copy of Defendant's November 4, 2010 FBAR filings, stamped as received by the IRS on November 8, 2010, as well as the FBAR filings dated November 30, 2010, that the IRS auditor, having obtained copies from Defendant during the audit, had apparently filed with the IRS on her behalf. ECF 139-13.[6] These documents were central to Defendant's defense, the explanation and search for them had occupied countless hours of time, but Plaintiff had been withholding them throughout the litigation.

---

[5] It is unknown whether Plaintiff just failed to examine the documents in its possession, or deliberately withheld them.
[6] The exhibit was provided to undersigned counsel by Plaintiff prior to its filing, on June 18, 2019. See *Dec*.

This episode demonstrates Plaintiff's repeated willingness to take factual positions that are contrary to the documents in its possession. While this may be tolerated in a lawsuit between two sophisticated parties, it should not be when the Untied States government is proceeding against an elderly *pro se* defendant.

*Plaintiff's Allegations of Prejudice Regarding Defendant's Discovery Violations*

The 3708 Letter, with a heretofore unseen Bates stamp number, revealing Plaintiff has a cache of unproduced documents, calls into question Plaintiff's claims of prejudice on account of Defendant's discovery failures.

First, Defendant has shown that Plaintiff has withheld materials that contradict the contentions it made to this Court. Yet, Plaintiff continued to allege prejudice in opposing Defendant's *Motion to Vacate Sanctions*, arguing that Defendant's "failure to produce documents that go to the core of this case" justified the denial of Defendant's *Motion to Vacate* the sanctions. ECF 151 at p. 2. While making these arguments, Plaintiff was withholding documents that not only supported Defendant's arguments, but also directly contradicted some of Plaintiff's arguments.

Second, Plaintiff contended that Defendant's production of her UBS records (after counsel entered the case) was so delayed as to cause prejudice. ECF 140 at 21; ECF 151 at p. 2-3 ("the newly produced documents provide strong evidence that [Defendant's] failure to file reports of her foreign bank accounts was willful. A party's failure to cooperate in discovery by withholding highly relevant documents cannot be rewarded in this manner"). In one instance, Plaintiff relied for its prejudice argument on some UBS records that it referred to as "newly produced documents," filed as ECF 152-1, to argue that Defendant's willfulness could be

inferred from information contained in these documents. ECF 151 at p. 3; ECF 152-1. Plaintiff's initial disclosures consisted of hundreds of pages of Defendant's UBS records, as Plaintiff obtained these records in accordance with the United States-Switzerland Income Tax Convention. See *Dec*.; ECF 139-10. As it turns out, the information Plaintiff relied on in making the argument based on ECF 152-1, the so-called "newly produced documents," was already contained in its own initial disclosures. (See Ex. 2).  Yet Plaintiff chose to portray the information as inculpatory information that was withheld from it throughout the litigation and only belatedly disclosed. Again, Plaintiff has either intentionally misrepresented its prejudice arguments or its misrepresentations are simply a symptom of disorganization.[7]

What is now known, and is substantial evidence supporting this Motion, is that, in addition to the withholding of documents throughout the case, Plaintiff was in possession of some of the very documents that it was claiming that Defendant was withholding and thereby causing prejudice to Plaintiff. As described below, Plaintiff's refusal to produce all its documents relating to the case prevents Defendant from knowing the extent to which Plaintiff already had the information it sought from Defendant. Plaintiff cannot claim prejudice on the basis that it did not receive documents it already possessed.

*Defendant's Discovery Requests and the Government's Duty towards a pro se Defendant*

As a result of Plaintiff's inexplicably late production of documents that seemed to be trickling in as the parties litigated the Defendant's *Motion to Vacate Sanctions*, Defendant requested Plaintiff provide all documents relating to the case to Defendant, and when that was refused, Defendant served a document request on Plaintiff, which included a request for

---

[7] Counsel for Defendant has never seen a sophisticated litigant produce documents without a Bates stamp number. It should be noted in this regard that documents from a *different* taxpayer were intermingled with Plaintiff's initial disclosures. See *Dec*.

documents relating to the assessment of the penalty, Defendant's bank records and Defendant's IRS file. See *Dec*. Plaintiff made numerous objections and refused to produce documents in response to that request. See *Dec*.

While it is unknown how many documents Plaintiff did not produce, it is known that Plaintiff proceeded against a *pro se* defendant who repeatedly raised defenses that were supported by documents withheld from her.[8]

This pattern of behavior, especially when dealing with a *pro se* defendant, is troubling to say the least. Many courts have advised that a United States government lawyer should be held to a higher standard. "The rationale underlying the prosecutor's obligation to do justice—her representation "not of an ordinary party ... but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all"—applies equally to attorneys who represent the government in civil disputes. DaCosta v. City of New York, 296 F. Supp. 3d 569, 600–01 (E.D.N.Y. 2017), citing Freeport–McMoRan Oil & Gas Co. v. F.E.R.C., 962 F.2d 45, 47 (D.C. Cir. 1992) (holding that the principle in the Supreme Court's Berger decision that "government lawyers have obligations beyond those of private lawyers ... appl[ies] with equal force to the government's civil lawyers."); *Judicial Notice and the Duty to Disclose Adverse Information*, 51 Iowa L. Rev. 807, 810 (1966) (a government attorney is in a "special position" because his "obligation to his specific client is tempered by the fact that he has a deeper obligation to the public, which his client represents, and to the enforcement of justice generally."); Zimmerman v. Schweiker, 575 F.Supp. 1436, 1440 (E.D.N.Y. 1983) ("The ponderous machinery of the federal bureaucracy and United States Attorney's Office should not

---

[8] For example, prior to counsel's discovery requests, Defendant, acting *pro se* and facing Plaintiff's allegations that she was "caught red-handed" by IRS auditors, had repeatedly asked about the FBARs she had filed in November, 2010. In response to those inquiries, Plaintiff did not see fit to produce the responsive documents in its possession. See e.g., ECF 147-2, p. 198-204.

be turned implacably against them unless the government has first stopped to ask itself, 'Is opposing this claim just, is it fair, is there a reasonable basis for believing that the government can prevail on both the law and fact?' "); Jack B. Weinstein & Gay A. Crosthwait, *Some Reflections on Conflicts Between Government Attorneys and Clients*, 1 Touro L. Rev. 1, 18 (1985) (Federal Rules of Civil Procedure 11 and 37 "embody the special duty the public's lawyers, as litigators, owe to the judicial system not to burden the courts with unnecessary litigation. To comply with this obligation, they are expected to stipulate whenever possible, to avoid offering clearly unacceptable or inadmissible evidence, and to cooperate in supplying documents and in preparing impartial experts under Rule 706 [of the Federal Rules of Evidence]."); id. at 28 ("[W]hile compliance with executive policy should be the norm, a compelling need exists in this society—as in others that have come before it—to mitigate the harshness of the law through the individualization of justice. Responding with courage, compassion, and good sense in the individual case places the government attorney squarely within our highest ethical and philosophical traditions."); Judge Charles Fahy, *Special Ethical Problems of Counsel for the Government*, 33 Fed. B.J. 331, 335 (1974) ("Where the client is the Government itself he who represents this vague entity often becomes its conscience, bearing a heavier responsibility than usually encountered by the lawyer."); Steven K. Berenson, *The Duty Defined: Specific Obligations That Follow from Civil Government Lawyers' General Duty to Serve the Public Interest*, 42 Brandeis L.J. 13, 31 (2003) ("[C]ourts will hold government attorneys to a higher standard that attorneys for private parties in refusing to countenance certain hardball litigation tactics, in light of government attorneys' broader duties to serve the public interest.") (internal punctuation omitted). See also Trout v. Garrett, 780 F.Supp. 1396, 1421 n. 60 (D.D.C.1991) (noting inscription above entrance to Office of the Attorney General of the U.S.:

"The United States wins its point whenever justice is done its citizens in the courts."); <u>Williams v. Sullivan</u>, 779 F.Supp. 471, 472 (W.D.Mo.1991) (explaining that government lawyer "has a duty beyond just zealously representing her client"; "there is a special duty imposed on government lawyers to 'seek justice and to develop a full and fair record'").

Plaintiff's pattern of behavior toward this Defendant, coupled with the existence of unproduced documents in Plaintiff's possession, cast doubt on Plaintiff's accusations that Defendant withheld critical documents from Plaintiff that interfered with Plaintiff's ability to prove its case, arguments which led to the severe sanction imposed on Defendant. While the Court's Order imposing sanctions was also concerned with Defendant's untimely compliance with the Court's discovery orders, its reliance on Plaintiff's claims of prejudice caused by the delay in discovery production are now called into question.

<u>**Conclusion**</u>

The crux of Plaintiff's request for severe sanctions against Defendant was based on its argument that she was deliberately withholding thousands of documents that it needed to advance its case. Yet, Plaintiff's late production of critical documents, the production of documents with Bates stamps not before seen in the case, its persistent refusal to provide any information or explanation of the Bates stamps or the documents that it has in its files, all provide a significant basis to question whether Plaintiff already had all relevant documents in its possession and Defendant's delay in producing documents in no way impacted its case. Plaintiff's failure to disclose the documents in its possession while simultaneously arguing that Defendant was withholding documents that went to "the core of this case," represents a

"substantial interference with the full and fair preparation or presentation" of Defendant's case.

West, 803 F.3d at 67.

      For these reasons, Defendant moves for relief under Fed. Rul. Civ. Pro. 60(b)(3).


                  Respectfully Submitted,
                  MONICA TOTH
                  By Her Attorneys,

                  /s/ Jeffrey Wiesner
                  Jeffrey Wiesner, BBO No. 655814
                  Jennifer McKinnon, BBO No. 657758
                  Wiesner McKinnon LLP
                  90 Canal Street
                  Boston, MA 02114
                  Tel.: (617) 303-3940
December 21, 2020          Fax: (617) 507-7976
                  Email: jwiesner@jwjmlaw.com
                  Email: jmckinnon@jwjmlaw.com